REVISED August 2, 2007

United States Court of Appeals
Fifth Circuit

F I L E D

June 29, 2007

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 06-50267

WALTER ALLEN ROTHGERY

Plaintiff - Appellant

v.

GILLESPIE COUNTY TEXAS

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas, Austin

Before KING, WIENER, and OWEN, Circuit Judges.

KING, Circuit Judge:

In McGee v. Estelle, we held that a warrantless arrestee's Sixth and Fourteenth Amendment right to counsel does not attach in Texas when he appears before a magistrate for statutory warnings if prosecutors are unaware of and uninvolved in the arrest and appearance. 625 F.2d 1206, 1208-09 (5th Cir. 1980). The district court in this case reached a similar conclusion where the warrantless arrestee's appearance involved not only statutory warnings, but also a probable cause determination by the magistrate that was supported by a police officer's affidavit accusing the arrestee of committing the relevant offense. Because we agree that the appearance in this case did not commence adversary

judicial proceedings for purposes of the Sixth and Fourteenth Amendment right to counsel, we AFFIRM the district court's order granting summary judgment for Gillespie County.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 15, 2002, officers of the Fredericksburg, Texas Police Department arrested plaintiff-appellant Walter Rothgery without a warrant on suspicion of being a felon in possession of a firearm, which is a third-degree felony in Texas. The suspicion was based on a criminal background check indicating that Rothgery had been convicted of a felony in California. In fact, felony charges against Rothgery in California had been dismissed after Rothgery completed a diversionary program, and both sides agree that Rothgery did not have a felony conviction.

Under the misimpression that Rothgery had a prior felony conviction, the officers booked Rothgery into the Gillespie County Jail. Rothgery says that he requested in writing the appointment of counsel at this point, though there is no record of the request. The next morning, on July 16, Rothgery was brought before a Justice of the Peace (the "magistrate") to be informed of the accusation against him and to be given statutory warnings under Article 15.17 of the Texas Code of Criminal Procedure, which provides for warnings generally equivalent to those required by Miranda v. Arizona, 384 U.S. 436 (1966).[1] Rothgery signed a document reflecting that the magistrate did so and that Rothgery stood

---

[1] Article 14.06 of the Texas Code of Criminal Procedure requires that a person arrested without a warrant be taken before a magistrate within 48 hours of arrest, at which point the magistrate must "immediately perform the duties described in Article 15.17." TEX. CODE CRIM. PROC. ANN. art. 14.06. Article 15.17, which also applies to those who are arrested under warrant, requires that the magistrate inform the arrestee of the accusation against him, of any affidavit filed against him, and of his rights to retain counsel, to have counsel appointed for him if he cannot afford counsel, to remain silent, to have an attorney present during interviews with officers of the state, to terminate interviews at any time, and to have an examining trial to probe the existence of probable cause. Id. art. 15.17. The magistrate may also "admit the person arrested to bail if allowed by law." Id.

"accused of the criminal offense of[] unlawful possession of a firearm by a felon which will be filed in 21st District Court." On the document, the magistrate swore that "[t]he accused has announced the intention to <u>waive right to counsel at this time</u>."[2] The magistrate set bond at $5,000.

The arresting officer also presented the court with an affidavit titled "Affidavit of Probable Cause." The form document was filled in with the officer's description of the events leading up to the arrest and recited, "I charge that heretofore, on or about the 15[th] day of July, 2002, in the County of Gillespie and the State of Texas, Defendant, Walter A. Rothgery, did then and there commit the offense of unlawful possession of a firearm by a felon——3rd degree felony." Based on the affidavit, the magistrate found that probable cause existed for Rothgery's arrest, signing the document under a portion of text stating, "I hereby acknowledge I have examined the foregoing affidavit and have determined that probable cause existed for the arrest of the individual accused therein." After the appearance, Rothgery posted a surety bond to obtain release from jail. The bond agreement between Rothgery and the bonding company states, among other details of Rothgery's arrest, that "Rothgery stands charged by complaint duly filed in the Justice of Peace Court."

Rothgery says that he repeatedly requested counsel in the months following his release, but no counsel was appointed. On January 17, 2003, six months after his arrest, a grand jury returned an indictment against Rothgery and he was rearrested the next day. Rothgery was brought before the magistrate again on January 19 and he again requested counsel, but no attorney was appointed. On January 23, still with no attorney, Rothgery was transferred

---

[2] According to Rothgery, the magistrate told him that he would have to waive his right to an attorney for purposes of the appearance if he wanted to have bail set at that time, and that otherwise he would have to wait in jail until an appointment was made. On the original typed document, only the words "waive right to counsel" were underlined, and Rothgery says that the words "at this time" were also underlined by hand to reflect this limited waiver.

to another jail due to overcrowding at the Gillespie County Jail.  Finally, after Rothgery requested counsel yet again, a state district judge appointed counsel on January 23, 2003.  Once appointed, Rothgery's counsel soon obtained records establishing that Rothgery had not been convicted of a felony.  He moved to dismiss the charges, and the motion was granted on April 30, 2003.

On July 15, 2004, Rothgery sued defendant-appellee Gillespie County under 42 U.S.C. § 1983, alleging that the county violated his Sixth and Fourteenth Amendment right to counsel by following a policy of denying appointed counsel to arrestees released from jail on bond and by failing to adequately train and monitor those involved in the appointment-of-counsel process.  Rothgery's contention is that counsel should have been appointed for him after his first appearance in the magistrate's court on July 16, 2002, and that the mistake underlying his arrest would have been discovered had counsel been timely appointed.  Gillespie County moved for summary judgment on the ground that Rothgery's Sixth and Fourteenth Amendment right to counsel did not attach until his indictment on January 17, 2003, which marked the initiation of adversary judicial proceedings against him.  The district court granted the motion on February 2, 2006, and issued a take-nothing final judgment. Rothgery appeals.[3]

## II.  STANDARD OF REVIEW

We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.  See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).  "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to

---

[3] We are indebted to the Solicitor General of Texas, Ted Cruz, who filed an amicus curiae brief in this appeal at our request, and to Professor George Dix of The University of Texas School of Law, who also filed an amicus curiae brief.

judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(c)). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## III. DISCUSSION

The Sixth Amendment, which is applicable to the states through the Fourteenth Amendment,[4] provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. This right "attaches only at or after the time that adversary judicial proceedings have been initiated . . . whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."[5] Kirby v. Illinois, 406 U.S. 682, 688-89 (1972) (citations and footnote omitted). But we do not rely formalistically on the label given to a particular pretrial event when determining the point at which adversary judicial proceedings have been initiated; instead, "the relevant time is when 'the government has committed itself to prosecute' and 'a defendant finds himself faced with the prosecutorial forces of organized society.'"[6] Caver v. Alabama, 577 F.2d 1188, 1195 (5th Cir. 1978) (quoting Kirby, 406 U.S. at 689); see also Lomax v. Alabama, 629 F.2d 413, 415 & n.3 (5th Cir. 1980) (rejecting the use of "purely

---

[4] Gideon v. Wainwright, 372 U.S. 335, 342 (1963). For clarity, we will refer only to the Sixth Amendment when discussing the right to counsel.

[5] After the Sixth Amendment right to counsel attaches, a defendant is entitled to counsel at "critical stages" of the proceedings, absent a valid waiver. See Michigan v. Jackson, 475 U.S. 625, 629-30 & n. 3, 632 n.5 (1986).

Gillespie County does not argue that the time between Rothgery's release on bond and his indictment six months later did not constitute a critical stage of the prosecution, and we do not decide that issue here.

[6] "We look to state law to determine when adversarial proceedings against the accused have commenced," Felder v. McCotter, 765 F.2d 1245, 1247 (5th Cir. 1985), abrogated on other grounds by Patterson v. Illinois, 487 U.S. 285, 295-96 & n.8 (1988), although the ultimate Sixth Amendment consequences of certain state procedures is a matter of federal law.

formal application of quantitative criteria" to determine when adversary judicial proceedings commenced).

Following this approach in Lomax v. Alabama, we instructed that "reliance should be placed on the sometimes elusive degree to which the prosecutorial forces of the state have focused on an individual." 629 F.2d at 415. Accordingly, we held that an arrest, under a warrant secured with a magistrate's probable cause determination, did not commence adversary judicial proceedings because the record did not reflect any prosecutorial awareness of or involvement in the arrest, nor any participation by prosecutors in preparing the "complaint affidavits used to secure" the warrant. Id. at 415-16. Similarly, we held in McGee v. Estelle that in Texas, "an adversary criminal proceeding has not begun in a case where the prosecution officers are unaware of either the charges or the arrest." 625 F.2d 1206, 1208 (5th Cir. 1980). We thus concluded that a warrantless arrestee's lineup and appearance before a magistrate for Article 15.17 warnings did not initiate adversary judicial proceedings, as prosecutors were unaware of and uninvolved in either event.[7] Id. at 1208-09.

It is undisputed in this appeal that the relevant prosecutors were not aware of or involved in Rothgery's arrest or appearance before the magistrate on July 16, 2002. There is also no indication that the officer who filed the probable cause affidavit at Rothgery's appearance had any power to commit the state to prosecute without the knowledge or involvement of a prosecutor. Compare TEX.

---

[7] While the opinion did observe at one point that an Article 15.17 warnings appearance before a magistrate "does not involve counsel for the state, nor is it a formal charge," McGee, 625 F.2d at 1209 (emphasis added), we do not read that to imply that formal charges may exist in Texas without any prosecutorial knowledge or involvement. In context, the statement merely clarified that prosecutors do not participate in such an appearance, nor are formal charges filed. We have not held that prosecutors must actually file the document that initiates adversary judicial proceedings, see, e.g., Felder, 765 F.2d at 1246, 1247-48 (noting that a police officer's filing of an affidavit and criminal complaint commenced adversary judicial proceedings), but merely that adversary judicial proceedings cannot initiate without some prosecutorial awareness or involvement, McGee, 625 F.2d at 1208; see also Lomax, 629 F.2d at 415.

CODE CRIM. PROC. ANN. art. 2.13 (limiting the role of a police officer, in relevant part, to notifying the magistrate of an offense and arresting offenders), with id. arts. 2.01-.02 (designating district and county attorneys as the representatives of the state in all criminal cases and proceedings); cf. Clawson v. Wharton County, 941 S.W.2d 267, 272 (Tex. App.--Corpus Christi 1996, writ denied) (recognizing that "the decision not to prosecute is the quintessential function of a prosecutor" (dash omitted)). And Rothgery provides no reason why the officer's acts should somehow be imputed to the prosecutor's office or should otherwise be interpreted to signal that Rothgery was opposed by the prosecutorial forces of the state. Consequently, the summary judgment evidence fails to establish that adversary judicial proceedings had been initiated against Rothgery during his magistrate appearance.

Rothgery raises several arguments against this conclusion. First, he contends that McGee's holding on prosecutorial involvement is not good law, as the Supreme Court has twice found adversary judicial proceedings to have been initiated without mentioning whether prosecutors were involved. See Michigan v. Jackson, 475 U.S. 625, 629 n.3 (1986); Brewer v. Williams, 430 U.S. 387, 399 (1977). However, neither case addressed the issue of prosecutorial involvement, much less the relevance of prosecutorial involvement under Texas law. Further, both cases involved a defendant who was arraigned on an arrest warrant, and an arraignment is one of the specific examples given in Kirby of pretrial events that initiate adversary judicial proceedings. Although Rothgery argues that the arraignment in Jackson was functionally no different than his appearance here, the state supreme court opinion preceding Jackson establishes that the prosecutor's office approved and issued the complaints and warrants that led to the arraignment. See People v. Bladel, 365 N.W.2d 56, 71-72 (Mich. 1984). And while the extent of prosecutorial involvement in Brewer was unaddressed, it does not appear that the state contested that adversary judicial proceedings had

begun or otherwise raised the issue. See Brewer, 430 U.S. at 399 ("The State does not contend otherwise."). At most, the opinions are neutral on the point, which is simply not enough for us to ignore our binding authority.[8]

Rothgery also argues that McGee is inapplicable here, as the appearance before the magistrate in McGee only involved the recitation of statutory warnings, whereas Rothgery's appearance included statutory warnings and a probable cause determination that was based on a police officer's affidavit. Rothgery contends that the affidavit, which related the events underlying the arrest and stated that the officer "charge[d]" that Rothgery committed the offense of being a felon in possession of a firearm, constituted a "complaint" or an otherwise formal charge that initiated adversarial proceedings.[9]

While only an indictment or information can formally charge a felony under Texas law,[10] see Teal v. State, No. PD-0689-06, 2007 WL 676221, at *2 (Tex. Crim. App. Mar. 7, 2007); see also TEX. CONST. art. I, § 10; TEX. CODE CRIM.

---

[8] According to Rothgery, United States v. Gouveia also affirmed that prosecutorial involvement is unnecessary because it used the word "or" when observing that it had "extended an accused's right to counsel to certain 'critical' pretrial proceedings . . . recognizing that at those proceedings, 'the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.'" 467 U.S. 180, 189 (1984) (citing United States v. Wade, 388 U.S. 218 (1967), and quoting United States v. Ash, 413 U.S. 300, 310 (1973)) (citations omitted). But in that passage the Court was discussing the applicability of the right to counsel at critical stages of the prosecution, not the specific question of when adversary judicial proceedings are initiated.

[9] Additionally, Rothgery asserts that his appearance before the magistrate commenced the prosecution because a magistrate has exclusive jurisdiction over a defendant's case upon the filing of a felony complaint until superseded by indictment. See Ex parte Clear, 573 S.W.2d 224, 229 (Tex. Crim. App. 1978). Even assuming that the affidavit in this case served the same function as the complaint in Clear, we fail to see how a magistrate's jurisdiction over preliminary matters alone signals the initiation of adversary proceedings when prosecutors are unaware of and uninvolved in the proceedings. Indeed, Clear itself involved a complaint that was sworn before a prosecutor and filed by the prosecutor with the magistrate. Id. at 225-26.

[10] Complaints may serve to formally charge a misdemeanor offense in justice and municipal courts. Huynh v. State, 901 S.W.2d 480, 481 n.3 (Tex. Crim. App. 1995).

PROC. ANN. arts. 21.01, 21.20; GEORGE E. DIX & ROBERT O. DAWSON, 41 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 20.01, at 513 (2d ed. 2001), complaints play a role in felony cases as well. Defined as "[t]he affidavit made before the magistrate or district or county attorney . . . charg[ing] the commission of an offense," TEX. CODE CRIM. PROC. ANN. art. 15.04, a complaint under Article 15.04 of the Texas Code of Criminal Procedure may serve both as a basis for a probable cause finding for an arrest warrant, see Huynh v. State, 901 S.W.2d 480, 481 n.3 (Tex. Crim. App. 1995); Lowery v. State, 499 S.W.2d 160, 163 (Tex. Crim. App. 1973), and "as a basis for the issuance of an information or the commencement of the indictment process," State v. Boseman, 830 S.W.2d 588, 590 n.3 (Tex. Crim. App. 1992); see also DIX & DAWSON, 41 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 19.01, at 473 ("As a matter of local practice, . . . complaints may be routinely filed in felony prosecutions and may reflect prosecutors' decisions to pursue formal felony charges in the particular cases."). Because "the process of prosecution is usually initiated by the filing of a criminal 'complaint'" serving that latter function, Boseman, 830 S.W.2d at 590 n.3, our court and the Texas Court of Criminal Appeals[11] have construed felony complaints to be sufficient to initiate adversary judicial proceedings.[12] See, e.g., Felder v. McCotter, 765 F.2d 1245, 1247-48 (5th Cir. 1985), abrogated on other grounds by Patterson v. Illinois, 487 U.S. 285, 295-

---

[11] While state case law is not binding on our court with regard to the applicability of the Sixth Amendment to state procedures, state cases are nonetheless useful for determining the nature of certain state procedures.

[12] Despite Rothgery's claim that Nehman v. State, 721 S.W.2d 319, 322 (Tex. Crim. App. 1986) (en banc), holds that the combination of a probable cause determination and an Article 15.17 warnings appearance initiates adversary judicial proceedings, the Texas Court of Criminal Appeals later observed that Nehman's holding was based on the presence of "unspecified 'charges.'" Green v. State, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994); Nehman, 721 S.W.2d at 323 n.2. At the very least, we must assume that Nehman involved a felony complaint.

96 & n.8 (1988); Forte v. State, 707 S.W.2d 89, 92 (Tex. Crim. App. 1986); Barnhill v. State, 657 S.W.2d 131, 132 (Tex. Crim. App. 1983).

However, none of those cases details the circumstances involved in the filing of the dispositive complaint or addresses an affidavit that was filed after a warrantless arrest to support a magistrate's probable cause inquiry at an Article 15.17 warnings appearance. In fact, in similar circumstances involving a warrantless arrest, a felony complaint, and a magistrate's probable cause determination at an Article 15.17 warnings appearance, the Texas Court of Criminal Appeals chose not to decide whether the complaint initiated adversary judicial proceedings, which indicates that the relationship between a complaint and the commencement of a prosecution in Texas is less clear than Rothgery claims.[13] See Green v. State, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994). As complaints may be used for different purposes, we simply cannot assume that the affidavit filed in this case was the same type of complaint addressed in the cases cited by Rothgery or that it served the same function as those complaints.

Consequently, we are reluctant to rely on the formalistic question of whether the affidavit here would be considered a "complaint" or its functional equivalent under Texas case law and Article 15.04 of the Texas Code of Criminal Procedure—a question to which the answer is itself uncertain.[14] Instead, we

---

[13] Green v. State involved a Sixth Amendment claim in the context of an arrest without a warrant, the filing of a "felony complaint" with a notation indicating the setting of bail, and an appearance before a magistrate for Article 15.17 warnings and a probable cause determination. 872 S.W.2d at 718. After discussing the indeterminacy of Texas law on the question of which procedures serve to initiate adversary judicial proceedings and noting the cases that have held that the filing of a complaint serves that function, the court stated: "We need not here decide when adversary judicial proceedings commence. For even if the felony complaint was sufficient to mark the initiation of adversary judicial proceedings, . . . nothing occurred at appellant's [hearing] that would render it a 'critical stage' of the prosecution against him." Id. at 720.

[14] As Gillespie County points out, Article 15.04 falls within the "Arrest Under Warrant" chapter of the Texas Code of Criminal Procedure, indicating that it may only apply to affidavits offered in support of an arrest warrant. Additionally, the provision refers to "[t]he affidavit"

must look to the specific circumstances of this case and the nature of the affidavit filed at Rothgery's appearance before the magistrate. And the summary judgment evidence, considered in the light most favorable to Rothgery, fails to establish that adversary judicial proceedings were commenced by the affidavit in this case.

The affidavit itself indicates that it was filed for the sole purpose of establishing probable cause, as it was titled "Affidavit of Probable Cause," it primarily consisted of the officer's account of the events and the alleged offense, and the portion of the affidavit signed by the magistrate illustrates that the magistrate relied on the officer's account to "determine[] that probable cause existed for the arrest." The inquiry and its timing shortly after arrest were thus consistent with the probable cause determination required by Gerstein v. Pugh, 420 U.S. 103, 114 (1975),[15] and County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991), for a person arrested without a warrant. And another form signed by the magistrate to memorialize the warnings given to Rothgery indicated that charges "will be filed" in the district court, not that they were being filed concurrently with the magistrate.

The only aspect of the probable cause affidavit that even arguably favors Rothgery's argument is its use of the word "charge" in the introductory language to the officer's identification of the offense for which he arrested Rothgery. Yet even as a complaint, the affidavit would be insufficient to formally charge

---

made before the magistrate or prosecutor, TEX. CODE CRIM. PROC. ANN. art. 15.04 (emphasis added), and its use of the definite article "the" indicates that its scope may be limited to affidavits detailed elsewhere in the code. The code does not explicitly provide for an affidavit offered at a probable cause hearing for a warrantless arrestee.

In practice, however, we cannot say that Texas courts would not consider a post-warrantless-arrest affidavit of probable cause to be an Article 15.04 complaint or its functional equivalent.

[15] The Court in Gerstein also recognized that such probable cause determinations typically are non-adversarial in nature and do not constitute "critical stages" requiring counsel. 420 U.S. at 120-22.

Rothgery with the felony, and there is no basis to conclude that the use of the word "charge" was, or could have been, anything but informal.[16] Cf. McGee, 625 F.2d at 1208 (referring to the prosecutor's lack of awareness of "the charges" in finding that adversary judicial proceedings had not initiated).

Most significantly, the summary judgment evidence reflects no prosecutorial knowledge of or involvement in the arrest and magistrate appearance, and Rothgery provides no reason to believe that the officer alone was empowered to commit the state to prosecute Rothgery. Indeed, it took prosecutors roughly six months after the arrest to seek an indictment against Rothgery. Without any evidence to indicate that the affidavit actually served to initiate the prosecution at the time of Rothgery's magistrate appearance, we conclude that the filing of the affidavit was part of the investigatory process, serving solely to validate the arrest without committing the state to prosecute.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting summary judgment to Gillespie County.

---

[16] For similar reasons, we also do not find the use of the word "charged" on Rothgery's bond form persuasive.