Darlene D. GENTRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–07–00052–CR.

Court of Appeals of Texas, Waco.

June 11, 2008.

Michael S. McNeely, Baytown, for appellant.

John W. Segrest, McLennan County Crim. Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Judge STEPHEN ELLIS [1].

## OPINION

STEPHEN ELLIS, Judge.

A jury convicted Darlene Gentry of murder and assessed her punishment at sixty years' imprisonment for the death of her husband, Waymon Keith Gentry. Gentry contends in five issues that the trial court (1) abused its discretion in denying her motion to suppress; (2) erred in its findings of facts and conclusions of law supporting the denial of the motion to suppress; (3) abused its discretion by denying her motion for change of venue due to pretrial publicity; (4) abused its discretion in excluding medical records supporting third-party motive; and (5) erred in refusing to poll the jury regarding their knowledge of a newspaper article published on the day of punishment. We will affirm.

---

1. Judge of the 35th District Court of Brown and Mills Counties, sitting by assignment of the Chief Justice of the Texas Supreme Court pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005).

## Background

At about 6:15 a.m., on November 9, 2005, police responded to a 9-1-1 call at the home of Keith and Darlene Gentry. When police arrived at the home, they found Keith unconscious, having suffered a gunshot wound to the head. Keith was taken by ambulance to the hospital, where he died later that day.

On the night of Keith's death, Gentry volunteered to be interviewed by police. After some questioning, she invoked her Fifth Amendment right to be silent and her Sixth Amendment right to counsel. At that time, police immediately stopped the interview, Gentry was released, and she hired an attorney.

Later that day, Gentry gave consent to search her home. During that search, investigators discovered a pair of latex gloves in the kitchen trash can that contained the casing of a .22 caliber bullet. The gloves were sent to the Texas Department of Public Safety Crime Lab, and gun shot residue along with the DNA profiles of Gentry and Keith were recovered. The police arrested Gentry on November 28, 2005 and she immediately bonded out of jail.

Shortly after Gentry was released on bond, she contacted Robert Pavelka about purchasing some property. Pavelka testified that Gentry told him that she needed to move and asked if he knew of a house to buy or some property on which to build. Pavelka told her that he owned some land near Axtell that had a pond. He said Gentry seemed excited about the pond because she said her husband had always wanted a place where he could take his sons fishing.

Pavelka later testified that he saw Gentry a few weeks later, and she told him that she was still interested in the land but she was no longer interested in the pond and asked if he could fill it in. He found that odd because he thought the pond was the reason that Gentry wanted to purchase the land. He testified that he became suspicious and contacted a friend at the McLennan County Sheriff's Office, who put him in touch with Texas Rangers Matt Cawthon and Steve Foster. The Rangers got consent to search Pavelka's pond, and a Texas Department of Public Safety dive team located a .22–caliber revolver.

Foster testified that after finding the gun, he and Cawthon asked Pavelka to call Gentry and tell her that he was willing to fill in the pond if she was still interested in the property. Foster's intention was to set up a surveillance camera at the pond to see if Gentry or anyone else would show up to retrieve the gun. Pavelka told Gentry that to fill in the pond, he would have to drain it first. Pavelka testified that Gentry told him to fill it in, adding that she called him back later and said she would like to be present when he drained it. Officers set up the surveillance camera on the pond that night, but Gentry did not attempt to visit the pond. When she did not show up, Foster again asked Pavelka to call Gentry and tell her that the pump to be used to drain the pond was broken, but that he would try to pump the pond the next day.

The next day, Foster and Cawthon, hiding in the bushes with a video camera, saw Gentry arriving at the pond in knee-high wading boots. They videotaped Gentry wading into the shallow water and probing the bottom of the pond with a stick. Foster testified that she was looking in the area where the dive team earlier had retrieved the pistol. The trial court admitted the videotape at trial, over Gentry's objection, and it was shown to the jury.

Before trial, Gentry filed a motion to suppress the statements made to Pavelka and the videotape of her at the pond.

Gentry also filed a pretrial motion for change of venue, arguing the significant pretrial publicity prevented her from receiving a fair trial in McLennan County. The trial court denied both motions.

During the trial, Gentry attempted to introduce the medical records of Keith and a married couple to show that all three had the sexually transmitted disease "herpes." Gentry argued that these medical records established a possible third-party motive in the shooting death of her husband. The trial court excluded the medical records. At the close of the State's case, the defense declined to call any witnesses and rested its case-in-chief. The jury found Gentry guilty and later sentenced her to sixty years in prison.

### Sixth Amendment Right to Counsel

In her first issue, Gentry argues that the phone call that motivated her to visit the pond where the gun was found was made in violation of her Sixth Amendment right. She asserts that, because she had invoked her Sixth Amendment right to counsel, Pavelka, who the State concedes was working as an agent of the State, could not contact her without the presence of her attorney. The State responds that Gentry's Sixth Amendment right to counsel had not attached, and that in the alternative, if it had attached, the contact between Gentry and Pavelka was not a critical pretrial stage requiring the assistance of counsel.

*Standard of Review*

■ We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89–90 (Tex.Crim.App.1997). When the facts are undisputed, as the relevant facts are here, and we are presented with a pure question of law, de novo review is

proper. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999).

*Attachment*

■ It is well recognized that the Sixth Amendment right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant. *United States v. Gouveia*, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (placing prisoner in administrative segregation before initiation of adversary judicial proceedings does not entitle him to appointment of counsel). Thus, the principal question before us is when adversary judicial proceedings commence in Texas. The Court of Criminal Appeals' case law has been indeterminate as to what event initiates adversary judicial proceedings, and that court has refused to draw a bright line. *See Green v. State*, 872 S.W.2d 717, 720 (Tex.Crim.App.1994); *State v. Frye*, 897 S.W.2d 324, 328 (Tex. Crim.App.1995).

Because there was no indictment before Gentry's conversation with Pavelka, she relies on her arrest several days before speaking with Pavelka as the initiation of adversary judicial proceedings. A minority of cases suggest that the Sixth Amendment right to counsel can attach before the indictment. *See Nehman v. State* 721 S.W.2d 319, 322 (Tex.Crim.App.1986) (adversary proceedings initiated at art. 15.17 "warning hearing"). In contrast, the State argues that the most accepted event for initiation of adversary proceedings in a felony case in Texas is indictment. *See DeBlanc v. State*, 799 S.W.2d 701, 706 (Tex.Crim.App.1990). The State contends that because Gentry had not been indicted, her Sixth Amendment right to counsel had not yet attached.

The Fifth Circuit Court of Appeals recently examined when adversary judicial proceedings are initiated in *Rothgery v.*

*Gillespie County.*[2]  491 F.3d 293, 297 (5th Cir.2007).  In *Rothgery*, the court recognized that although only an indictment or information can formally charge a felony under Texas law, complaints play a role in felony cases as well.  *Id.* at 298–99 (citing *Teal v. State*, 230 S.W.3d 172, 175–78 (Tex.Crim.App.2007)).  It also noted that because "the process of prosecution is usually initiated by the filing of a criminal complaint, the Texas Court of Criminal Appeals has construed pre-indictment felony complaints to be sufficient to initiate adversary judicial proceedings."  *Id.* at 299 (citing *Forte v. State*, 707 S.W.2d 89, 92 (Tex.Crim.App.1986), and *Barnhill v. State*, 657 S.W.2d 131, 132 (Tex.Crim.App. 1983)).

Further, the Court of Criminal Appeals has held that a lineup after arrest but before the initiation of any adversary criminal proceeding, is not a criminal prosecution at which the accused, as a matter of absolute right, is entitled to counsel.  *See Wyatt v. State*, 566 S.W.2d 597, 600 (Tex. Crim.App.1978) (indicating that an arrest in and of itself, is not the initiation of adversary criminal proceedings).

Although Gentry and the State disagree, we need not here decide when adversary judicial proceedings commence.  For even if the police complaint that resulted in arrest was sufficient to mark the initiation of adversary judicial proceedings, we agree with the State that nothing occurred in the conversation between Gentry and Pavelka that would render it a "critical stage" of the prosecution against her.

*Critical Stage*

█ Not every event following the inception of adversary judicial proceedings constitutes a "critical stage" so as invoke the Sixth Amendment.  *Green*, 872 S.W.2d at 720; *see also United States v. Ash*, 413 U.S. 300, 317, 93 S.Ct. 2568, 2577–78, 37 L.Ed.2d 619, 630 (1973).  The presence of counsel at such critical stages, as at the trial itself, operates to assure that the accused's interests will be protected consistent with our adversary system of criminal prosecution.  *United States v. Wade*, 388 U.S. 218, 227, 87 S.Ct. 1926, 1931–1932, 18 L.Ed.2d 1149 (1967).  To determine whether such proceedings constitute a "critical stage," the court must find that the accused required aid in coping with legal problems or assistance in meeting his adversary.  *Green*, 872 S.W.2d at 720.  In essence, we must scrutinize any pretrial event with a view to ascertaining whether the presence of counsel is necessary to assure fairness and the effective assistance of counsel at trial.  *Id.*

█ It is apparent that the conversations between Gentry and Pavelka were not ones in which Gentry was "confronted with both the intricacies of the law and the advocacy of the public prosecutor."  The conversations that occurred were set up, not by the local district attorney's office, but by law enforcement in their investigation of the case.  Gentry was not in custody, nor was she being interrogated.

█ Finally, the purpose of the Sixth Amendment right to counsel is not to create a "protective cloak" around a defendant, which prevents the police from continuing to investigate a defendant, but to assist with legal complexities.  *Thompson v. State*, 108 S.W.3d 269, 274 (Tex.Crim. App.2003).  We thus hold that, under these facts, Gentry was not entitled to the presence of counsel.  The trial court did not abuse its discretion in admitting Gentry's statements made to Pavelka and the

2.  While federal case law is not binding on us with regard to the applicability of the Sixth Amendment to state procedures, federal cases are nonetheless useful for determining the nature of the appropriate examination of federal questions.

videotape. In this case, law enforcement in general and the Texas Rangers in particular were shown to be guilty of nothing so much as excellent police work. Gentry on the other hand was proven to the satisfaction of the jury to be guilty of the murder of her husband. Because the trial court did not err in concluding that Gentry was not entitled to the presence of counsel during her conversations with Pavelka, we overrule issue one and we do not need to address Gentry's second issue.[3] Tex.R.App. P. 47.1.

## Change of Venue

In Gentry's third issue, she contends that the trial court abused its discretion in denying her motion for change of venue due to pretrial publicity. Gentry supported her motion with her own affidavit, affidavits of two local attorneys, and numerous articles demonstrating the amount of pretrial publicity the case had received. The State filed controverting affidavits of two local attorneys who opined that Gentry could receive a fair trial in McLennan County. At the hearing on the motion, Gentry called no witnesses, but the State called Russell Hunt, a former prosecutor and now a criminal defense attorney. Hunt testified that based on his many years as both a prosecutor and defense attorney in McLennan County, he believed that Gentry could receive a fair and impartial trial despite pretrial publicity. He stated that he had tried several cases that were more high profile than the present case and had received a fair and impartial trial despite the pretrial publicity.

A change of venue is warranted because of pretrial publicity if "the publici-

ty about the case was pervasive, prejudicial and inflammatory." *Salazar v. State*, 38 S.W.3d 141, 150 (Tex.Crim.App.2001); *accord Labonte v. State*, 99 S.W.3d 801, 805 (Tex.App.-Beaumont 2003, pet. ref'd), *cert. denied*, 540 U.S. 927, 124 S.Ct. 335, 157 L.Ed.2d 229 (2003). The two primary means of discerning whether publicity is pervasive are a hearing on the motion to change venue and the voir dire process. *Bell v. State*, 938 S.W.2d 35, 46 (Tex.Crim. App.1996). If the accused raises "substantial doubts about obtaining an impartial jury" because of "widespread inflammatory news coverage," the constitutional right to a fair trial is implicated. *Phillips v. State*, 701 S.W.2d 875, 879 (Tex.Crim.App. 1985) (citing *Bell v. State*, 582 S.W.2d 800, 810–11 (Tex.Crim.App.1979)).

We review the trial court's ruling for abuse of discretion, measured by whether the accused proved "such prejudice in the community that the likelihood of obtaining a fair and impartial trial is dubious." *Id.* at 879; *Neumuller v. State*, 953 S.W.2d 502, 507 (Tex.App.-El Paso 1997, pet. ref'd). But publicity in the news alone will not support a change of venue. *Willingham v. State*, 897 S.W.2d 351, 357 (Tex.Crim.App.1995); *Phillips*, 701 S.W.2d at 879. In addition, prospective jurors are not required to be completely ignorant of the facts and issues. *DeBlanc*, 799 S.W.2d at 704. In addition, effective voir dire to screen against prospective jurors who might have been prejudiced by the news weighs against a finding of abuse of discretion. *Phillips*, 701 S.W.2d at 880.

At the beginning of voir dire, the trial court stressed to the jury panel the importance of disregarding anything they

---

**3.** In issue two, Gentry argues an alternative theory as to why the motion to suppress should have been granted. Gentry contends that the court's findings of fact and conclusions of law do not support the denial of her motion to suppress the videotape. Because we have concluded that the denial of the motion to suppress was not an abuse of discretion, the resolution of issue one is dispositive of this alternative theory.

had heard in the media. During voir dire, Gentry asked the jury panel if anyone had heard about the case in the media. Thirty-three jurors out of sixty had seen or heard about the case. At the end of voir dire, the trial court struck eleven of those jurors on its own. Gentry failed to use her peremptory strikes on some of the remaining prospective jurors, and five who had heard about the case were seated on the jury. Gentry also did not challenge for cause any of the jurors who had pretrial exposure.

The Court of Criminal Appeals recently held that the fact that there are a number of panelists who have heard about the case does not establish that the pretrial publicity has permeated the community to such an extent that the decision to deny the motion for a change of venue is outside the zone of reasonable disagreement. *Gonzalez v. State*, 222 S.W.3d 446, 450 (Tex. Crim.App.2007). In *Gonzalez*, although 67% of the jury panel had heard of the case, and 32% of them were unable to set aside their preconceived opinions, the court determined that the trial court did not abuse its discretion in denying the motion for change of venue.

Nothing in the record distinguishes Gentry's case from the numerous others in which the Court of Criminal appeals has upheld a trial court's denial of a motion to change venue. Because nothing in the record indicates that the pretrial publicity "was pervasive, prejudicial, and inflammatory," we cannot say that the trial court abused its discretion by denying Gentry's motion to change venue. *See Salazar*, 38 S.W.3d at 150. We overrule issue three.

### Medical Records

At trial, Gentry attempted to introduce medical records that indicated Keith and another couple had the sexually transmitted disease "herpes." In her fourth issue,

Gentry contends that the trial court erred in excluding the medical records into evidence because it supported an allegation of marital infidelity as a possible motive for a third party to murder Keith.

The admissibility of evidence is within the trial court's discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex.Crim. App.2001). The first step in a trial court's determination of whether evidence should be admitted before the jury is finding the evidence to be relevant. *Montgomery v. State*, 810 S.W.2d 372, 375 (Tex.Crim.App. 1990). Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and will not be reversed absent an abuse of discretion. *Moreno v. State*, 858 S.W.2d 453, 463 (Tex.Crim.App.1993). As long as the trial court's ruling was at least within the zone of reasonable disagreement, an appellate court should not intercede. *Montgomery*, 810 S.W.2d at 391.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R. EVID. 401. Although Gentry may attempt to establish her innocence by showing that someone else committed the crime, she still must show that the proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged "alternative perpetrator." *Wiley v. State*, 74 S.W.3d 399, 406 (Tex.Crim.App.2002). It is not sufficient for Gentry merely to offer up unsupported speculation that another person may have committed the crime. *Id.* at 407. Gentry claims that the medical records that were excluded are evidence of the other two persons' motive to murder Keith, but this evidence, standing alone, is

highly speculative and not sufficiently relevant to establish motive. *See Casterline v. State,* 736 S.W.2d 207 (Tex.App.-Corpus Christi 1987, pet. ref'd). We cannot say that the court abused its discretion by concluding that the excluded evidence is not relevant to the issue of motive. *See id.* We overrule Gentry's fourth issue.

## Jury Poll

 In her final issue, Gentry argues that the trial court erred in refusing to poll the jury in-camera concerning a newspaper article published about missing evidence the day the sentencing took place. Gentry was required to make her alleged jury misconduct claim at a motion for new trial, and no such motion was made. *Trout v. State,* 702 S.W.2d 618, 620 (Tex. Crim.App.1985) (holding that if an instance of alleged jury misconduct is not properly presented by motion for new trial, it is not properly preserved for appeal). Therefore, we conclude that Gentry has not preserved her complaint on this issue. We overrule Gentry's fifth issue.

## Conclusion

We affirm the judgment of the trial court.

Chief Justice GRAY concurs in the judgment. A separate opinion will not issue.