IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00052-CR

 

Darlene D. Gentry,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 19th District Court

McLennan County, Texas

Trial Court No. 2006-20-C1

 



Opinion



 

A jury convicted Darlene Gentry of murder and
assessed her punishment at sixty years’ imprisonment for the death of her
husband, Waymon Keith Gentry.  Gentry contends in five issues that the trial court
(1) abused its discretion in denying her motion to suppress; (2) erred in its
findings of facts and conclusions of law supporting the denial of the motion to
suppress; (3) abused its discretion by denying her motion for change of venue
due to pretrial publicity; (4) abused its discretion in excluding medical
records supporting third-party motive; and (5) erred in refusing to poll the
jury regarding their knowledge of a newspaper article published on the day of
punishment.  We will affirm.

Background

At about 6:15 a.m., on November 9, 2005, police
responded to a 9-1-1 call at the home of Keith and Darlene Gentry.  When police
arrived at the home, they found Keith unconscious, having suffered a gunshot
wound to the head.  Keith was taken by ambulance to the hospital, where he died
later that day. 

On the night of Keith’s death, Gentry volunteered
to be interviewed by police.  After some questioning, she invoked her Fifth
Amendment right to be silent and her Sixth Amendment right to counsel.  At that
time, police immediately stopped the interview, Gentry was released, and she
hired an attorney.

Later that day, Gentry gave consent to search her
home.  During that search, investigators discovered a pair of latex gloves in
the kitchen trashcan that contained the casing of a .22 caliber bullet.  The
gloves were sent to the Texas Department of Public Safety Crime Lab, and gun
shot residue along with the DNA profiles of Gentry and Keith were recovered.  The
police arrested Gentry on November 28, 2005 and she immediately bonded out of
jail.

Shortly after Gentry was released on bond, she
contacted Robert Pavelka about purchasing some property.  Pavelka testified
that Gentry told him that she needed to move and asked if he knew of a house to
buy or some property on which to build.  Pavelka told her that he owned some
land near Axtell that had a pond.  He said Gentry seemed excited about the pond
because she said her husband had always wanted a place where he could take his
sons fishing.

Pavelka later testified that he saw Gentry a few
weeks later, and she told him that she was still interested in the land but she
was no longer interested in the pond and asked if he could fill it in.  He
found that odd because he thought the pond was the reason that Gentry wanted to
purchase the land.  He testified that he became suspicious and contacted a
friend at the McLennan County Sheriff’s Office, who put him in touch with Texas
Rangers Matt Cawthon and Steve Foster.  The Rangers got consent to search Pavelka’s
pond, and a Texas Department of Public Safety dive team located a .22-caliber
revolver.

Foster testified that after finding the gun, he
and Cawthon asked Pavelka to call Gentry and tell her that he was willing to
fill in the pond if she was still interested in the property.  Foster’s
intention was to set up a surveillance camera at the pond to see if Gentry or
anyone else would show up to retrieve the gun.  Pavelka told Gentry that to
fill in the pond, he would have to drain it first.  Pavelka testified that
Gentry told him to fill it in, adding that she called him back later and said
she would like to be present when he drained it.  Officers set up the
surveillance camera on the pond that night, but Gentry did not attempt to visit
the pond.  When she did not show up, Foster again asked Pavelka to call Gentry
and tell her that the pump to be used to drain the pond was broken, but that he
would try to pump the pond the next day.

The next day, Foster and Cawthon, hiding in the
bushes with a video camera, saw Gentry arriving at the pond in knee-high wading
boots.  They videotaped Gentry wading into the shallow water and probing the
bottom of the pond with a stick.  Foster testified that she was looking in the
area where the dive team earlier had retrieved the pistol.  The trial court
admitted the videotape at trial, over Gentry’s objection, and it was shown to
the jury.

Before trial, Gentry filed a motion to suppress
the statements made to Pavelka and the videotape of her at the pond.  Gentry
also filed a pretrial motion for change of venue, arguing the significant
pretrial publicity prevented her from receiving a fair trial in McLennan County.  The trial court denied both motions.

During the trial, Gentry attempted to introduce
the medical records of Keith and a married couple to show that all three had
the sexually transmitted disease “herpes.”  Gentry argued that these medical
records established a possible third-party motive in the shooting death of her
husband.  The trial court excluded the medical records.  At the close of the
State’s case, the defense declined to call any witnesses and rested its
case-in-chief.  The jury found Gentry guilty and later sentenced her to sixty years
in prison.








Sixth Amendment Right to Counsel 

In her first issue, Gentry argues that the phone
call that motivated her to visit the pond where the gun was found was made in
violation of her Sixth Amendment right.  She asserts that, because she had
invoked her Sixth Amendment right to counsel, Pavelka, who the State concedes
was working as an agent of the State, could not contact her without the
presence of her attorney.  The State responds that Gentry’s Sixth Amendment right
to counsel had not attached, and that in the alternative, if it had attached,
the contact between Gentry and Pavelka was not a critical pretrial stage requiring
the assistance of counsel.

Standard
of Review 

We review a trial court’s ruling on a motion to
suppress under a bifurcated standard of review.  Carmouche v. State, 10
S.W.3d 323, 327-28 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d
85, 89-90 (Tex. Crim. App. 1997).  When the facts are undisputed, as the
relevant facts are here, and we are presented with a pure question of law, de
novo review is proper.  Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim.
App. 1999).  

Attachment


It is well recognized that the Sixth Amendment
right to counsel attaches only at or after the initiation of adversary judicial
proceedings against the defendant.  United States v. Gouveia, 467 U.S. 180, 187, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (placing prisoner in
administrative segregation before initiation of adversary judicial proceedings
does not entitle him to appointment of counsel).  Thus, the principal question
before us is when adversary judicial proceedings commence in Texas.  The Court
of Criminal Appeals’ case law has been indeterminate as to what event initiates
adversary judicial proceedings, and that court has refused to draw a bright
line.  See Green v. State, 872 S.W.2d 717, 720 (Tex. Crim. App. 1994); State
v. Frye, 897 S.W.2d 324, 328 (Tex. Crim. App. 1995).

Because there was no indictment before Gentry’s conversation
with Pavelka, she relies on her arrest several days before speaking with
Pavelka as the initiation of adversary judicial proceedings.  A minority of
cases suggest that the Sixth Amendment right to counsel can attach before the
indictment.  See Nehman v. State 721 S.W.2d 319, 322 (Tex. Crim. App.
1986) (adversary proceedings initiated at art. 15.17 “warning hearing”).  In
contrast, the State argues that the most accepted event for initiation of
adversary proceedings in a felony case in Texas is indictment.  See DeBlanc v.
State, 799 S.W.2d 701, 706 (Tex. Crim. App. 1990).  The State contends that
because Gentry had not been indicted, her Sixth Amendment right to counsel had
not yet attached.

The Fifth Circuit Court of Appeals recently
examined when adversary judicial proceedings are initiated in Rothgery v. Gillespie County.[1]  491 F.3d 293, 297 (5th Cir. 2007).  In Rothgery, the court recognized that
although only an indictment or information can formally charge a felony under Texas law, complaints play a role in felony cases as well.  Id. at 298-99 (citing Teal
v. State, 230 S.W.3d 172, 175-78 (Tex. Crim. App. 2007)).  It also noted
that because "the process of prosecution is usually initiated by the
filing of a criminal complaint, the Texas Court of Criminal Appeals has construed
pre-indictment felony complaints to be sufficient to initiate adversary
judicial proceedings.”  Id. at 299 (citing Forte v. State,
707 S.W.2d 89, 92 (Tex. Crim. App. 1986), and Barnhill v. State, 657
S.W.2d 131, 132 (Tex. Crim. App. 1983)).

Further, the Court of Criminal Appeals has held
that a lineup after arrest but before the initiation of any adversary criminal
proceeding, is not a criminal prosecution at which the accused, as a matter of
absolute right, is entitled to counsel.  See Wyatt v. State, 566 S.W.2d
597, 600 (Tex. Crim. App. 1978) (indicating that an arrest in and of itself, is
not the initiation of adversary criminal proceedings).

Although Gentry and the State disagree, we need
not here decide when adversary judicial proceedings commence.  For even if the
police complaint that resulted in arrest was sufficient to mark the initiation
of adversary judicial proceedings, we agree with the State that nothing
occurred in the conversation between Gentry and Pavelka that would render it a "critical
stage" of the prosecution against her.

Critical
Stage 

Not every event following the inception of
adversary judicial proceedings constitutes a "critical stage" so as
invoke the Sixth Amendment.  Green, 872 S.W.2d at 720; see also United States v. Ash, 413 U.S. 300, 317, 93 S.Ct. 2568, 2577-78, 7 L.Ed.2d 619, 630
(1973).  The presence of counsel at such critical stages, as at the trial
itself, operates to assure that the accused's interests will be protected
consistent with our adversary system of criminal prosecution.  United States v. Wade, 388 U.S. 218, 227, 87 S.Ct. 1926, 1931-1932, 18 L.Ed.2d 1149
(1967).  To determine whether such proceedings constitute a "critical
stage," the court must find that the accused required aid in coping with
legal problems or assistance in meeting his adversary.  Green, 872
S.W.2d at 720.  In essence, we must scrutinize any pretrial event with a view
to ascertaining whether the presence of counsel is necessary to assure fairness
and the effective assistance of counsel at trial.  Id.

It is apparent that the conversations between
Gentry and Pavelka were not ones in which Gentry was "confronted with both
the intricacies of the law and the advocacy of the public prosecutor." 
The conversations that occurred were set up, not by the local district attorney’s
office, but by law enforcement in their investigation of the case.  Gentry was
not in custody, nor was she being interrogated.

Finally, the purpose of the Sixth Amendment right
to counsel is not to create a "protective cloak" around a defendant, which
prevents the police from continuing to investigate a defendant, but to assist
with legal complexities.  Thompson v. State, 108 S.W.3d 269, 274 (Tex. Crim. App. 2003).  We thus hold that, under these facts, Gentry was not entitled to
the presence of counsel.  The trial court did not abuse its discretion in
admitting Gentry’s statements made to Pavelka and the videotape.  In this case,
law enforcement in general and the Texas Rangers in particular were shown to be
guilty of nothing so much as excellent police work.  Gentry on the other hand
was proven to the satisfaction of the jury to be guilty of the murder of her
husband.  Because the trial court did not err in concluding that Gentry was not
entitled to the presence of counsel during her conversations with Pavelka, we
overrule issue one and we do not need to address Gentry’s second issue.[2] 
Tex. R. App. P. 47.1.

Change of Venue

In Gentry’s third issue, she contends that the
trial court abused its discretion in denying her motion for change of venue due
to pretrial publicity.  Gentry supported her motion with her own affidavit,
affidavits of two local attorneys, and numerous articles demonstrating the
amount of pretrial publicity the case had received.  The State filed controverting
affidavits of two local attorneys who opined that Gentry could receive a fair
trial in McLennan County.  At the hearing on the motion, Gentry called no
witnesses, but the State called Russell Hunt, a former prosecutor and now a criminal
defense attorney.  Hunt testified that based on his many years as both a
prosecutor and defense attorney in McLennan County, he believed that Gentry
could receive a fair and impartial trial despite pretrial publicity.  He stated
that he had tried several cases that were more high profile than the present
case and had received a fair and impartial trial despite the pretrial
publicity.

A change of venue is warranted because of pretrial
publicity if “the publicity about the case was pervasive, prejudicial and
inflammatory.”  Salazar v. State, 38 S.W.3d 141, 150 (Tex. Crim. App.
2001); accord LaBonte v. State, 99 S.W.3d 801, 805 (Tex. App.—Beaumont
2003, pet. ref’d), cert. denied, 540 U.S. 927 (2003).  The two primary
means of discerning whether publicity is pervasive are a hearing on the motion
to change venue and the voir dire process.  Bell v. State, 938
S.W.2d 35, 46 (Tex. Crim. App. 1996).  If the accused raises "substantial
doubts about obtaining an impartial jury" because of "widespread
inflammatory news coverage," the constitutional right to a fair trial is
implicated.  Phillips v. State, 701 S.W.2d 875, 879 (Tex. Crim. App.
1985) (citing Bell v. State, 582 S.W.2d 800, 810-11 (Tex. Crim. App.
1979)).

We review the trial court's ruling for abuse of
discretion, measured by whether the accused proved "such prejudice in the
community that the likelihood of obtaining a fair and impartial trial is
dubious."  Id. at 879; Neumuller v. State, 953 S.W.2d 502,
507 (Tex. App.—El Paso 1997, pet. ref'd).  But publicity in the news alone will
not support a change of venue.  Willingham v. State, 897 S.W.2d 351, 357
(Tex. Crim. App. 1995); Phillips, 701 S.W.2d at 879.  In addition,
prospective jurors are not required to be completely ignorant of the facts and
issues.  DeBlanc, 799 S.W.2d at 704.  In addition, effective voir
dire to screen against prospective jurors who might have been prejudiced by the
news weighs against a finding of abuse of discretion.  Phillips, 701
S.W.2d at 880. 

At the beginning of voir dire, the trial court
stressed to the jury panel the importance of disregarding anything they had
heard in the media.  During voir dire, Gentry asked the jury panel if anyone
had heard about the case in the media.  Thirty-three jurors out of sixty had
seen or heard about the case.  At the end of voir dire, the trial court struck
eleven of those jurors on its own.  Gentry failed to use her peremptory strikes
on some of the remaining prospective jurors, and five who had heard about the
case were seated on the jury.  Gentry also did not challenge for cause any of
the jurors who had pretrial exposure.

The Court of Criminal Appeals recently held that
the fact that there are a number of panelists who have heard about the case
does not establish that the pretrial publicity has permeated the community to
such an extent that the decision to deny the motion for a change of venue is
outside the zone of reasonable disagreement.  Gonzalez v. State, 222
S.W.3d 446, 450 (Tex. Crim. App. 2007).  In Gonzalez, although 67% of
the jury panel had heard of the case, and 32% of them were unable to set aside
their preconceived opinions, the court determined that the trial court did not
abuse its discretion in denying the motion for change of venue.

Nothing in the record distinguishes Gentry’s case
from the numerous others in which the Court of Criminal appeals has upheld a
trial court’s denial of a motion to change venue.  Because nothing in the
record indicates that the pretrial publicity “was pervasive, prejudicial, and
inflammatory,” we cannot say that the trial court abused its discretion by
denying Gentry’s motion to change venue.  See Salazar, 38 S.W.3d
at 150.  We overrule issue three.

Medical Records

At trial, Gentry attempted to introduce medical
records that indicated Keith and another couple had the sexually transmitted
disease “herpes.”  In her fourth issue, Gentry contends that the trial court
erred in excluding the medical records into evidence because it supported an
allegation of marital infidelity as a possible motive for a third party to murder
Keith.

The admissibility of evidence is within the trial
court’s discretion.  Powell v.
State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).  The first step in a trial
court’s determination of whether evidence should be admitted before the jury is
finding the evidence to be relevant.  Montgomery v. State, 810
S.W.2d 372, 375 (Tex. Crim. App. 1990).  Questions of relevance should be left
largely to the trial court, relying on its own observations and experience, and
will not be reversed absent an abuse of discretion.  Moreno v. State,
858 S.W.2d 453, 463 (Tex. Crim. App. 1993).  As long as the trial court’s
ruling was at least within the zone of reasonable disagreement, an appellate
court should not intercede.  Montgomery, 810 S.W.2d at 391.

Evidence is relevant if it has any tendency to
make the existence of any fact that is of consequence to the determination of
the action more probable or less probable than it would be without the
evidence.  Tex. R. Evid. 401. 
Although Gentry may attempt to establish her innocence by showing that someone
else committed the crime, she still must show that the proffered evidence
regarding the alleged alternative perpetrator is sufficient, on its own or in
combination with other evidence in the record, to show a nexus between the crime
charged and the alleged "alternative perpetrator."  Wiley v. State,
74 S.W.3d 399, 406 (Tex. Crim. App. 2002).  It is not sufficient for Gentry
merely to offer up unsupported speculation that another person may have committed
the crime.  Id. at 407.  Gentry claims that the medical records that
were excluded are evidence of the other two persons’ motive to murder Keith,
but this evidence, standing alone, is highly speculative and not sufficiently
relevant to establish motive.  See Casterline v. State, 736 S.W.2d
207 (Tex. App.—Corpus Christi 1987, pet. ref’d).  We cannot say that the court
abused its discretion by concluding that the excluded evidence is not relevant
to the issue of motive.  See id.  We overrule Gentry’s fourth
issue.

Jury Poll 

In her final issue, Gentry argues that the trial
court erred in refusing to poll the jury in-camera concerning a newspaper
article published about missing evidence the day the sentencing took place. 
Gentry was required to make her alleged jury misconduct claim at a motion for
new trial, and no such motion was made.  Trout v. State, 702
S.W.2d 618, 620 (Tex. Crim. App. 1985) (holding that if an instance of alleged
jury misconduct is not properly presented by motion for new trial, it is not
properly preserved for appeal).  Therefore,
we conclude that Gentry has not preserved her complaint on this issue.  We
overrule Gentry’s fifth issue.

Conclusion

            We affirm the judgment of the trial
court.

  

 

STEPHEN ELLIS

Judge

 

Before Chief Justice
Gray,

            Justice
Vance, and

            Judge Stephen
Ellis[3]  

(Chief
Justice Gray concurs in the judgment.  A separate opinion will not issue.) 

Affirmed 

Opinion delivered and
filed June 11, 2008

Publish

[CRPM]

 

 

 









[1]  While federal case law is not binding on us with
regard to the applicability of the Sixth Amendment to state procedures, federal
cases are nonetheless useful for determining the nature of the appropriate examination
of federal questions.





[2]  In issue two, Gentry argues an alternative theory as to why the
motion to suppress should have been granted.  Gentry contends that the court’s
findings of fact and conclusions of law do not support the denial of her motion
to suppress the videotape.  Because we have concluded that the denial of the
motion to suppress was not an abuse of discretion, the resolution of issue one
is dispositive of this alternative theory.





[3]  Judge of the 35th District Court of Brown and Mills Counties, sitting by assignment of the Chief Justice of the Texas Supreme Court
pursuant to section 74.003(h) of the Government Code.  See Tex. Gov’t Code Ann. § 74.003(h)
(Vernon 2005).