Affirmed and Memorandum Opinion filed June 4, 2009








Affirmed and Memorandum Opinion filed June 4, 2009.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00123-CR

_______________

 

COYLE THOMAS JENNINGS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

                                                                                                                                               


On Appeal from the 209th District Court

Harris County, Texas

Trial Court Cause No. 1100488

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

A jury
found appellant, Coyle Thomas Jennings, guilty of aggravated robbery and
assessed punishment at eight years= confinement.  The trial court
sentenced appellant accordingly.  In two issues, appellant argues the trial
court erred in not suppressing a video recording of a
canine-scent-identification procedure because (1) counsel was not present at
the procedure and (2) the procedure was impermissively suggestive.  Because our
disposition is based on clearly settled law, we issue this memorandum opinion
and affirm.  See Tex. R. App. P. 47.4.








I.  Factual and Procedural Background

On a
December evening a few days after Christmas 2006, Friday Thomas, his wife,
Sandra Walker, their twelve-year-old son, Xien Thomas, and Sandra=s twenty-seven-year-old son, Narada
Walker, were at their home in west Harris County.  Narada was on leave from
Moody Air Force Base in Georgia.  Friday=s seventeen-year-old son, Phillip,
sometimes stayed at the house, but was not present that evening.  Friday and
Sandra had gone upstairs to bed.  Xien and Narada were playing video games in
the den while they awaited the arrival of Narada=s friends.

Around
eight o=clock, someone started ringing the
doorbell and knocking at the door.  Thinking it was his friends, Narada opened
the door.  He saw two males pointing guns at him.  They were wearing dark
hoodies and gloves and had ski masks covering their faces.  One was about five
feet eight inches tall; the other, about six feet one inch tall.

At this
point, Friday was upstairs, just outside the bedroom.  He saw a hand with a gun
and heard a voice tell Narada, A[T]his is no kidding.  This is a robbery.@  Friday left through an upstairs
window and went to a neighbor=s house, where he and the neighbor called 911 for a police
emergency.

The two
masked men entered the house and ordered Narada and Xien to sit on the couch. 
According to Sandra, the taller man then went upstairs, placed a gun against
Sandra=s head, and ordered her downstairs. 
The taller man gave the shorter one his gun, and while the shorter man held
Narada, Xien, and Sandra at gunpoint, the taller man went through the house
collecting items as the shorter man directed him.  The shorter man kept
insisting Phillip had told them Friday had a briefcase filled with money in the
house.  The men collected car keys and wallets and eventually found a
briefcase.  When they attempted to flee through the front door, they saw officers
waiting for them.  They slammed the front door, then removed their masks.     








Sandra
recognized the shorter man as Phillip=s friend, whom she knew as AG.@  G had been to their house on
several occasions, and Sandra had last seen him in June 2006.  G went upstairs
with Sandra and Xien.  The taller man then forced Narada to go outside and tell
the police the men inside were friends.  With the taller man behind him
pointing a gun, Narada opened the door and yelled to the police that the men
were just his friends.  The police commanded Narada to place his hands on his
head, backed him to a car, and handcuffed him.  Eventually, Friday and Narada
convinced the police Narada was not one of the robbers.  Meanwhile, the two
robbers fled through a patio door to the back yard and were not found that
night.  After the robbers left, Sandra grabbed Xien and ran outside, where she
told Friday and the officers G was one of the robbers.

Harris
County Sheriff=s Office Detective Scott Ashmore investigated the case and learned
appellant used the street name AG.@  Ashmore compiled a photographic array with appellant=s picture.  He showed it to Sandra on
January 12, 2007; and, without hesitation, she identified appellant=s photograph as that of one of the
robbers.  At Sandra=s request, Ashmore did not interview Xien or ask him to view
the photographic array.  Ashmore sent the photographic array by email to Narada
in Georgia, but Narada did not identify appellant.  On January 16, 2007,
appellant was charged with armed robbery and arrested.

On
January 21, 2007, Ashmore visited Sandra and Friday=s home and obtained a scent sample
from the car keys and the patio door handle.  He then obtained a scent sample
from appellant.[1]

On
January 22, 2007, the court appointed counsel to represent appellant.








On
January 29, 2007, Ashmore took the scent samples to Deputy Keith Pikett, a canine
handler for the Fort Bend County Sheriff=s Office.  Pikett and his three
bloodhounds conducted a scent identification using the samples taken from
appellant, the keys, and the door handle.

The
procedure was videotaped.  Ashmore assisted and also narrated the video, which
showed six numbered cans set up across a field and sidewalk.  Ashmore first
placed the scent from the keys in can three and scents from non-suspects in the
other five cans.  In turn, Ashmore then allowed each dog to sniff appellant=s scent, and Pikett walked that dog
down the line of cans, saying Acheck@ as the dog passed each can.  The first dog did not Ahit@ on a can until Pikett walked him
past the cans a second time.  The other two dogs hit on can three on their
first attempts.  Ashmore and Pikett then repeated the procedure, this time
putting the scent from the door handle in can four.  Each of the dogs hit on
can four on the first try.  After at least three of the hits, Pikett praised or
patted the successful dog.  After each successful trial, Ashmore commented that
the dog Ahit@ on the particular can.  At the
conclusion, he observed that each dog had its individual manner of alerting on
the cans.

On April
2, 2007, a grand jury indicted appellant.  Before trial, appellant filed a AMotion to Suppress Video Taken
1/29/07 of Bloodhounds Allegedly Alerting on Scent Pads.@  Appellant argued the procedure was
the  equivalent of a live lineup and he had been deprived of his Sixth
Amendment right to counsel at the procedure.  At the motion hearing, appellant
additionally argued the procedure was Aimproperly suggestive,@ but did not cite any constitutional
right allegedly violated.  The trial court denied the motion.

Trial
was to a jury.  Friday, Narada, Xien, Sandra, Pikett, Ashmore, the three
officers  initially dispatched to the robbery, and the officer who conducted a
canine search of the area testified for the State.  The State also played the
video of the canine identification with Pikett explaining events as they
appeared on the tape.








Appellant
called a single witness.  Cherika Cole, appellant=s brother=s fiancé, testified appellant had
been at her apartment Apretty much the entire time@ on the day of the robbery.  Cole
first conveyed this information after appellant=s investigator indicated that
something was happening and Cole and others needed to write a statement.

The jury
found appellant guilty.

II.  Discussion

In two
issues, appellant contends the trial court erred in denying his motion to
suppress the video of the canine-scent-identification procedure.  We apply a
bifurcated standard in reviewing a trial court=s ruling on a motion to suppress
evidence.  Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). 
Accordingly, we must give great deference to the trial court=s findings of historical facts as
long as the record supports the findings, especially when the findings are
based on an evaluation of credibility and demeanor.  Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  We afford the same amount of
deference to the trial court=s ruling on Amixed questions of law and fact@ when those issues turn on an
evaluation of witnesses= credibility and demeanor.  Id.  When rulings on Amixed questions of law and fact@ do not turn on an evaluation of
credibility and demeanor, we review the rulings de novo.  Id.  If the
trial court=s decision is correct on any theory of law applicable to the case, we
must sustain the decision.  State v. Ross, 32 S.W.3d 853, 855B56 (Tex. Crim. App. 2000).

A.  Issue One:
Right to Counsel

In issue
one, appellant contends he was denied his Sixth Amendment right to counsel
during the scent-identification procedure.  The Sixth Amendment guarantees a
criminal defendant the assistance of counsel at the initiation of adversary
proceedings against him and at any subsequent Acritical stage@ of the proceedings.  Estelle v.
Smith, 451 U.S. 454, 469B70 (1981); Thompson v. State, 93 S.W.3d 16, 23 (Tex.
Crim. App. 2001).   








Even if
one assumes adversarial proceedings commenced with issuance of the complaint in
this case,[2] neither
collection of the defendant=s scent sample nor the recorded canine identification,
constituted a critical stage.  See Merritt v. State, 76 S.W.3d 632, 634
(Tex. App.CHouston [14th Dist.] 2002, no pet.) (A[A] videotape of a lineup is similar
to a photo array, which does not implicate the Sixth Amendment right to
counsel.@); Rose v. State, 711 S.W.2d
89, 91B92 (Tex. App.CDallas 1986, no pet.) (holding taking
of blood and saliva samples for DNA testing not critical stage of proceedings).

Appellant
did not have a right to counsel during the scent-identification procedure. 
Accordingly, we overrule his first issue.

B.  Suggestiveness
of the Procedure

In issue
two, appellant contends the procedure was Aunconstitutionally suggestive@ in violation of his due process
rights.  As discussed below, appellant has not preserved a complaint of
constitutional error; this court has previously upheld the admissibility of
similar evidence under Texas Rule of Evidence 702; and error, if any, in
admitting the evidence was harmless.








In the
trial court, appellant objected to the following aspects of the procedure as
rendering the procedure Aimproperly suggestive@:  (1) the handler=s knowledge, after the first dog hit
on a can, of the target scent=s location; (2) Ashmore=s commentary on the tape, directing
the audience=s attention to the fact the dog hit on a particular can; and (3) Ashmore=s proximity to the handler when
Ashmore was commenting on the results.  Appellant, however, did not argue the
procedure violated any constitutional right, did not cite a state or federal
constitutional provision, and did not cite the trial court to any case law. 
Appellant has failed to preserve the constitutional dimension of his objection
to the evidence.  See Sterling v. State, 800 S.W.2d 513, 521 (Tex. Crim.
App. 1990) (AGenerally, error must be presented at trial with a timely and specific
objection, and any objection at trial which differs from the complaint on
appeal preserves nothing for review.@); Rios v. State, 263 S.W.3d
1, 6B7 (Tex. App.CHouston [14th Dist.] 2005, pet. dism=d) (holding hearsay objection insufficient
to preserve claim of confrontation clause violation).

Appellant
also did not, and does not in this court, refer to any rule of evidence
warranting exclusion of the evidence.  This court has held that similar
testimony is admissible under Texas Rule of Evidence 702 and Nenno v. State,
970 S.W.2d 549, 560B61 (Tex. Crim. App. 1998), overruled on other grounds by
State v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App. 1999).  See Winston v.
State, 78 S.W.3d 522, 527B29 (Tex. App.CHouston [14th Dist.] 2002, pet. ref=d).

Finally,
even if we assume appellant=s claim was sufficient to preserve constitutional error and
that the trial court erred in admitting the video, we conclude any error was
harmless beyond a reasonable doubt.  The video is just less than twelve minutes
long.  The first attempt it shows is unsuccessful.  The dogs are the focal
point of the video; and the relationship between scent samples, purported
canine identification of those samples, and appellant=s commission of the robbery arguably
would strike a jury as attenuated, in light of undisputed evidence that
appellant had been in the victim=s house on other occasions.

In
contrast, Sandra positively, consistently, and unequivocally identified
appellant as the shorter of the robbers.  Sandra and Xien were with the shorter
robber for most of the time after the men removed their masks.  Narada=s failure to identify appellant is
readily explained by his having not been with him during that time.  The only
conflicting evidence was Cherika Cole=s testimony that appellant was with
her when the robbery occurred, but Cole=s testimony was suspect given her
relationship to appellant and the circumstances under which she first told her
story.








Finally,
during closing argument the prosecutor told the jurors she was not asking them Ato convict somebody of aggravated
robbery based on a scent pad lineup.  I=m not asking that.  I brought that to
show you, this is something more, in addition to Sandra Walker=s identification. . . . This is
further investigation that the police did.  Something to show you more.@  Thus, the State did not
significantly rely on the video or its contents.

Assuming,
without deciding, appellant preserved the constitutional error of which he
complains on appeal, and that error did occur, we conclude Abeyond a reasonable doubt that the
error did not contribute to the conviction or punishment.@  Tex. R. App. R. 44.2(a).   
Accordingly, we overrule appellant=s second issue.

Having
overruled appellant=s two issues, we affirm the judgment.

 

 

 

 

/s/        Charles W. Seymore

Justice

 

 

 

 

 

Panel consists of Justices Seymore,
Brown, and Sullivan.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  He obtained the samples from the keys and door
handle by rubbing them with a gauze swab.  He obtained appellant=s sample by having appellant rub the swab between his
hands.





[2]  See Gentry v. State, 259 S.W.3d 272, 276B77  (Tex. App.CWaco
2008, pet. ref=d) (discussing split of Texas authority on whether
right to counsel attaches with filing of criminal complaint or issuance of the
indictment).