Lonnie Rayallen LABONTE, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–01–029 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 6, 2003.

Decided Feb. 19, 2003.

David P. O'Neil, John Bennett, Riverside, for appellant.

Michael A. McDougal, Dist. Atty., Dan P. Bradley, Asst. Dist. Atty., Conroe, for State.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

A jury convicted appellant of Capital Murder. The State did not seek death as a punishment option upon conviction; therefore, an automatic assessment of life in the Texas Department of Criminal Justice–Institutional Division was rendered by the trial court. *See* TEX. PEN.CODE ANN. § 19.03(b) (Vernon 1994); TEX. PEN.CODE ANN. § 12.31(a) (Vernon 1994). Three issues are raised for appellate consideration, *viz:*

1. The appellant was deprived of his Sixth Amendment right to effective assistance of counsel.

2. The trial court abused its discretion in refusing to change the venue of the trial.

3. The trial court erred in issuing a limiting instruction regarding the bias of a key state witness.

At the outset of our analysis of Issue 1, we note that the record indicates appellant filed a *pro se* motion for new trial. There is no mention of ineffective assistance of trial counsel in this motion. There is no indication in the record of either an evidentiary hearing or a ruling by the trial court regarding this motion.

In the recent case of *Bone v. State,* 77 S.W.3d 828 (Tex.Crim.App.2002), the Court framed the issue, in a somewhat woeful tone, as follows:

> We are once again asked whether an appellate court may reverse a conviction on ineffective assistance of counsel grounds when counsel's actions or omissions may have been based upon tactical decisions, but the record contains no specific explanation for counsel's decisions. Once again we answer that question "no."

*Id.* at 830. (footnote omitted) Here we are implicitly asked the same question because the record is absolutely silent as to trial counsel's strategies with regard to the acts or omissions complained of by appellate counsel.

As noted by appellate counsel, the legal standard applicable to appellant's ineffective assistance claims is set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prevail on his claims, appellant must first show that trial counsel's performance was deficient. *Id.,* 466 U.S. at 687, 104 S.Ct. 2052; *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex.Crim.App.2002). Specifically, appellant must prove, by a preponderance of the evidence, that trial counsel's representation fell below the objective standard of

professional norms. *Id.* at 642. Second, appellant must show that this deficient performance prejudiced his defense. *Id.* As the Court explained in *Mitchell,* "This means that the appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.*

Appellate review of trial counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance. *Bone,* 77 S.W.3d at 833. Normally, the record on direct appeal will not be sufficient to show that trial counsel's representation was so deficient and so lacking in tactical or strategic decision-making as to overcome the presumption that counsel's conduct was reasonable and professional. *Id.* As the Court has repeatedly recognized, rarely will the trial record contain sufficient information to permit a reviewing court to fairly evaluate the merits of such a serious allegation. *See Johnson v. State,* 68 S.W.3d 644, 655 (Tex.Crim.App.2002) ("The record does not reveal defense counsel's reasons for not objecting [to] the prosecutor's comments. Given the presumption of effectiveness and the great deference we give to decisions made by defense counsel, we see nothing in the present record that would compel us to find counsel ineffective."); *Mitchell,* 68 S.W.3d at 642, ("Generally the record on direct appeal will not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard. The reasonableness of counsel's choices often involves facts that do not appear in the appellate record. A petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims.") (footnote omitted); *Garcia v. State,* 57 S.W.3d 436, 440 (Tex.Crim.App.2001) ("[A]n appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' 3 W. LaFave, et al., *Criminal Procedure* § 11.10(c) (2d ed. 1999), and will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it."); *Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999) ("To defeat the presumption of reasonable professional assistance, 'any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.'") (quoting *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996)).

■ We have carefully reviewed the lengthy record in the instant case. We find, contrary to appellate counsel's allegations, that trial counsel's performance was, for the most part, exemplary. The major complaint as to trial counsel's performance appears to be that, after having filed pretrial motions specifically tailored to prevent the State from mentioning any extraneous offenses committed by appellant, especially involving drugs or "dealing drugs," trial counsel began his opening statement by admitting that appellant was a drug user and a drug dealer. Taken in the context of the facts trial counsel apparently had before him, we certainly cannot say that the decision to be "up front and honest" about appellant's connection with drugs was an inappropriate trial strategy. The record reflects that appellant's life, and the lives of several of the key fact witnesses, were saturated with illicit drug use and drug trafficking. Furthermore, it appears from the record that a co-defendant and key witness, Melissa "Cat" Branon, who had maintained for almost three years that she was not present at the scene of the murders when they were committed, changed her story approximately

two weeks before appellant's trial began and testified, under a grant of "use" immunity, that she was present when appellant and the third co-defendant, Russell Wayne Lefleur, confronted the victims at the scene of the crime on the night of the murders. Because so much of the daily lives of certain key witnesses, including Ms. Branon, centered so heavily on illicit drug usage and drug dealing, and because the lives of these individuals were also so intertwined with appellant's life and daily activities, trial counsel may have felt that openness regarding appellant's involvement with drugs would desensitize the jury and mitigate any prejudicial effects. Also, since the type of drug usage and selling by appellant did not involve violence, at least up to the night of the murders, a reasonable trial strategy would have been to attempt to place the blame on the only other person who, prior to Ms. Branon, admitted being at the murder scene at the time of the killings-Gabriel Saxton. The jury was made well aware that Saxton had pending aggravated assault charges out of Montgomery County. As we are not required to speculate on trial counsel's actions when confronted with a silent record, we will end our brief suppositions on trial strategies.

The totality of the representation by trial counsel included vigorous and cogent cross-examination of State's witnesses; a brief, but potentially damaging defense in which a former friend of Gabriel Saxton testified that Saxton admitted murdering the victims; and testimony from a DNA serologist for the Texas Department of Public Safety which impeached prior laboratory results that had indicated a presumptively positive test for the presence of blood on the truck in appellant's custody at the time of the murders. At the conclusion of the trial, it was for the jury to determine the credibility, or lack thereof, of the many witnesses called by the parties. As noted above, many of the State's civilian fact witnesses had lives tainted by heavy illicit drug use and/or drug dealing. It was for the jury to decide which parts of the testimony, if any, to believe. The same can be said for the State's scientific evidence. From our examination of the entire record we find appellant has failed to prove any deficient performance of his trial counsel with regard to any of the alleged errors of omission or commission.[1] Appellant's first issue is overruled.

■■■ As for appellate Issue 2, we note that a defendant seeking a change of venue has the burden to prove the existence of prejudice in the community and that the likelihood of obtaining a fair and impartial jury is doubtful. *See Moore v. State,* 935 S.W.2d 124, 129 (Tex.Crim.App.1996). To satisfy this burden, the defendant must demonstrate an actual, identifiable prejudice on the part of the members of his jury, which has so permeated the community that prospective jurors' prejudicial opinions cannot be set aside. *Id.*

---

**1.** With regard to appellate counsel's allegation that trial counsel failed to object to incriminating and prejudicial questions and answers during the polygraph interview, we find that trial counsel did indeed object. The record indicates that trial counsel was very insistent that the jury not be made aware that any portion of the police interview of appellant was related to a polygraph examination. The trial court agreed, and a "sanitized" version of the police interview eliminating any reference to the polygraph examination was admitted before the jury. In sub-parts *"c"* and *"d"* of Issue 1, appellate counsel fails to specify how these isolated instances, in the context of the entire trial record, could be proven to be deficient performance which reasonably would have led to appellant's acquittal. The substance of the complaint made in sub-part *"e"* will be discussed under our analysis of Issue 3.

■ Courts have held that a change of venue is required only where pretrial publicity is "so pervasive and prejudicial as to create a reasonable probability that an impartial jury cannot be empaneled even with the most careful voir dire." *Narvaiz v. State*, 840 S.W.2d 415, 428 (Tex.Crim. App.1992). Due process does not, however, require that jurors come completely ignorant of the facts of the case. *Id.; see also Bell v. State*, 938 S.W.2d 35, 46 (Tex. Crim.App.1996). In *Penry v. State*, 903 S.W.2d 715, 728 (Tex.Crim.App.1995), the Court held that knowledge of some details of the case by venire members was acceptable because of assurances from those members that they could try the case strictly on the evidence.

The trial court conducted a hearing on appellant's change of venue motion. Both appellant and the State elicited testimony from witnesses that supported their respective positions on the issue. Appellant introduced into evidence four videotapes containing reports by the local television media regarding the murders, as well as newspaper accounts of various events surrounding the subsequent police investigation, the arrests of appellant and his co-defendants, Russell Wayne Lefleur and Melissa Branon, the pretrial and post-trial coverage of Lefleur's trial, and the pretrial coverage of appellant's trial. The trial court ultimately denied the motion.

We acknowledge the fact that there was extensive media coverage of this case. We cannot say, however, that the trial court abused its discretion in denying the motion to change venue. Subsequent to the venue hearing, the parties and the trial court agreed on a jury selection procedure that was intended to reduce the chance that a biased or prejudiced member of the community would ultimately serve on the jury. A group of ninety-eight venire members was initially called and requested to fill out a questionnaire that had been drawn up by both parties and the trial court. Thereafter, based upon the answers to certain key questions on the questionnaire, venire members were questioned individually outside the hearing of the rest of the panel. The key questions were intended to discover which potential jurors, if any, had heard of the case at all and/or had formed any opinion as to appellant's guilt. Individuals expressing any prejudicial opinions against appellant were excused from jury service. The remaining venire members were then subjected to the standard voir dire proceeding from which the final twelve jurors were selected.

■ We realize that a successful qualification of a jury panel is no substitute for a separate and complete hearing on a properly presented motion for change of venue. *See Henley v. State*, 576 S.W.2d 66, 71 (Tex.Crim.App.1978). However, a trial court is not precluded from utilizing voir dire to help gauge the "community climate of opinion as to a defendant." *Id.* There is nothing in the record to indicate the trial court failed to consider all of the testimony and physical evidence tendered by both parties at the change of venue hearing. The trial court was also permitted to consider the entirety of the responses heard during the extended voir dire process, including the written responses contained in the juror questionnaire. We find no abuse of discretion by the trial court in denying appellant's motion for change of venue. Appellant failed to carry his burden of proving the existence of identifiable and pervasive prejudice within the Montgomery County community such that the likelihood of obtaining a fair and impartial jury was doubtful. Issue two is overruled.

■ Appellant's final issue complains of a limiting instruction given by the trial court in response to an answer elicited from a State's witness during cross-examination. It is important to see the context

in which the offending response was elicited and trial counsel's apparent basis for asking the question, as well as what is argued to us on appeal. The record reflects that the witness being cross-examined was Joseph E. Sclider of the Montgomery County Sheriff's Department. Detective Sclider was one of the investigators in connection with the murders. Trial counsel was questioning Detective Sclider on various aspects of the criminal investigation into the murders when the following exchange took place:

Q.[Appellant's Trial Counsel]: In your investigation, you have determined that Gabriel Saxton is a convicted felon; is that correct?

A.[Det. Sclider] Yes, sir, he is.

Q. You have found through your investigation that he's under indictment in Montgomery County—

[State]: Objection, Your Honor.

Q.(By [Trial Counsel])—for the offense—

[State]: Objection. Your Honor. May we approach?

THE COURT: Yes. Approach.

(AT THE BENCH, ON THE RECORD)

[State]: It is inappropriate "under indictment." He has got to be convicted.

THE COURT: Sustained.

[Trial Counsel]: I disagree, Your Honor. The case law is replete with the fact that if somebody is under indictment for a felony, that it goes to the credibility of that witness; and I have to—I have the right to bring out anything that has to do with his credibility. And one of them is bias in plea bargaining.

THE COURT: Well, actually—

[State]: There is—

THE COURT: If he were on the stand and you were crossing him, the only thing that I'm aware of you can ask him about is final convictions of a felony or a misdemeanor involving moral turpitude, but I'm looking. What rule would you cite me to that would allow in—

[Trial Counsel]: It goes to the credibility of the witnesses and my right to impeach those witnesses.

[State]: Impeach.

The record indicates that this discussion continued with the trial court ultimately overruling the State's objection and addressing the jury as follows:

THE COURT: Ladies and gentlemen, I'm going to overrule the objection at this time, but I'm going to give you an instruction and you need to listen to me very carefully.

There has been a couple times alluded to or stated that Mr. Gabe Saxton has been indicted for aggravated assault. At this point in the trial, I'm instructing you that any reference to that is not to be considered by you for the truth of the statement that he may or may not have been indicted. I'm not allowing that in at this point as a truth or as a fact whatsoever. You're not to consider it as true.

What I'm allowing it in for is to go to the state of mind of this investigator, this witness, and how he was investigating the case with respect to the entire— entirety of the case; not that it was true or not true. I'm not allowing it in for that at all, but only to the extent that counsel wants to inquire what was in this gentleman's state of mind as he continued his investigation.

Okay. Let's move along.

Appellant's argument is framed in the following manner:

Here the evidence that Mr. Saxton had been indicted was offered for a proper purpose-to show his bias as a State witness. The law allows such evidence. Rule 613(b). The trial court

then limited the jury's consideration of the indictment to an *improper* purpose, that of showing the investigator's state of mind. A new trial is required.

The fact that the same evidence was later admitted without a limiting instruction is of no consequence. When the trial court gave the limiting instruction regarding Mr. Saxton's indictment, the instruction said "*any reference* to *that* is not to be considered by you for the truth of the statement that he may or may not have been indicted."

(emphasis in original) (record references omitted) (citations omitted).

Appellant's argument to us, as was trial counsel's argument to the trial court, is correct as a general statement of law, but both arguments fail to recognize that the witness at the time was Detective Sclider, not Gabriel Saxton. Had Saxton been on the witness stand, then trial counsel would have had a very strong argument in an attempt to use the pending indictment for aggravated assault out of Montgomery County to show a possible bias on Saxton's part for testifying favorably to the State's theory of the case. *See Maxwell v. State,* 48 S.W.3d 196, 199–200 (Tex.Crim.App. 2001); *Carroll v. State,* 916 S.W.2d 494, 499–501 (Tex.Crim.App.1996); Tex.R. Evid. 607, 613(b). Since Detective Sclider was the witness, appellant could not impeach Saxton through Sclider.

Additionally, even had Saxton been the witness and trial counsel had been permitted to impeach him with his pending aggravated assault charge, such testimony is without probative value, cannot be considered as substantive evidence by the factfinder, and is subject to an appropriate limiting instruction. *See Goodman v. State,* 665 S.W.2d 788, 792 n. 2 (Tex.Crim. App.1984); *DeLeon v. State,* 77 S.W.3d 300, 313 (Tex.App.-Austin 2001, pet. ref'd). Although appellant prefers a different emphasis, we find the trial court correctly worded the instruction to the particular circumstances occurring at the time. The trial court expressly limited his instruction by using phrases such as "[a]t this point in the trial," "at this point," and further limited the testimony to "this witness." As noted earlier in this opinion, both the State and appellant later elicited from Saxton that he was indeed facing pending aggravated assault charges. We conclude the trial court did not err in providing the limiting instruction at the point in the trial at which it was given. Issue three is overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.