In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00372-CR


NO. 09-08-00373-CR


____________________



KELVIN GRANT ALEXANDER a/k/a 


KELVIN GRANT ALEXANDER, JR., Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 359th District Court 


Montgomery County, Texas


Trial Cause Nos. 07-08-08026-CR, 07-02-01683-CR






MEMORANDUM OPINION


 In a single trial of separately indicted offenses, Kelvin Grant Alexander was convicted
by a jury of aggravated robbery and possession of a controlled substance. For the aggravated
robbery, the jury assessed punishment at confinement in the Texas Department of Criminal
Justice - Correctional Institutions Division for a term of twenty-seven years; for possession
of a controlled substance, the jury assessed confinement in the same facility for a term of five
years. The trial court granted the State's motion to cumulate the two terms of confinement. 
The appeals are consolidated with appellate counsel filing a single brief for both causes. In
both appeals, Alexander raises the identical lone issue: "Appellant was deprived of his Sixth
Amendment right to effective assistance of counsel at trial when trial counsel failed to make
a meaningful argument and file a timely motion for probation." We affirm the judgment of
conviction in both cases.

 A defendant facing criminal prosecution has the right to reasonably effective
assistance of counsel. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984); Garcia v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). To obtain
appellate relief under this theory, a defendant must show that trial counsel's performance was
deficient, and that, because of this deficient performance, a reasonable probability exists that
the result of the proceeding would have been different. Strickland, 466 U.S. at 687, 694. It
is the defendant who bears the burden of proving his ineffective assistance claim by a
preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App.
1998). 

 In assessing an ineffective assistance complaint, we apply a strong presumption that
trial counsel was competent. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 
We also presume that trial counsel's actions and decisions were reasonably professional and
were motivated by sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771-72 (Tex.
Crim. App. 1994). When, as in the instant case, there has been no post-trial evidentiary
proceeding during which trial counsel is afforded the opportunity to present evidence of the
strategic bases, if any, for his trial decisions, it is extremely difficult for a defendant to
shoulder his burden of showing counsel performed deficiently. See Bone v. State, 77 S.W.3d
828, 833 (Tex. Crim. App. 2002); Stults v. State, 23 S.W.3d 198, 208-09 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). Absent such evidence, appellate courts are not at
liberty to find trial counsel's conduct ineffective unless the challenged conduct was "'so
outrageous that no competent attorney would have engaged in it.'" Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting Garcia, 57 S.W.3d at 440). Additionally,
any Strickland claim must be "'firmly founded in the record' and 'the record must
affirmatively demonstrate' the meritorious nature of the claim." Goodspeed, 187 S.W.3d at
392 (quoting Thompson, 9 S.W.3d at 813, 814) (declining to speculate on counsel's failure
to object to hearsay in light of a silent record). 

 Rarely is direct appeal an adequate vehicle for raising Strickland issues because the
record is generally undeveloped. See Bone, 77 S.W.3d at 833. "'[T]rial counsel should
ordinarily be afforded an opportunity to explain his actions before being denounced as
ineffective.'" Goodspeed, 187 S.W.3d at 392 (quoting Rylander v. State, 101 S.W.3d 107,
111 (Tex. Crim. App. 2003)). Moreover, as has so often been noted, no Texas court defines
the right to effective assistance of counsel as the right to error-free counsel. Ex parte
Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990); Mercado v. State, 615 S.W.2d 225,
228 (Tex. Crim. App. 1981); Ex parte Burns, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). 
 Alexander's trial counsel has not been provided an opportunity to respond to the
allegations that his trial performance was deficient in the two areas mentioned. Therefore,
Alexander has failed to overcome the strong presumption that counsel's actions during trial
were reasonable. Mallett v. State, 65 S.W.3d 59, 67 (Tex. Crim. App. 2001). After
examining the record, we also fail to find the two alleged deficiencies to be "outrageous" in
any manner. Goodspeed, 187 S.W.3d at 392. In fact, we find the jury argument at issue to
be entirely consistent with a reasonable trial strategy, and find the issue of the failure to file
a timely motion for community supervision to be completely unsupported by the record. 

 We begin by addressing the failure to file the application for community supervision.
The record before us reflects that the jury venire was qualified on whether the members could
consider recommending community supervision for Alexander under the appropriate
circumstances. Then, at the close of the punishment phase, trial counsel asked the jury to
recommend Alexander for community supervision. The trial court provided the jury with a
community supervision option in the punishment charge for each case. Lastly, the clerk's
record in the aggravated robbery cause does indeed contain a written motion for community
supervision filed by trial counsel. See Tex. Code Crim. Proc. Ann. art. 42.12, § 4(e)
(Vernon Supp. 2009). The motion is file-stamped "July 28, 2008," the day the trial began. 
Alexander's brief contains the following assertion in support of his ineffectiveness
contention: "Defense Counsel also did not file a Motion for Probation [sic] until the State's
Attorney reminded him of the mistake during the punishment phase of the trial." 

 On the record before us, Alexander has failed to prove any prejudice resulted from any
tardiness of trial counsel's motion. Strickland, 466 U.S. at 692. Had Alexander not raised
this sub-issue, from an examination of the trial record it would be impossible to tell that the
question of community supervision had not been fully and fairly litigated. Regardless of the
timeliness of the motion, the trial court allowed the motion, submitted the issue to the jury
and the jury considered Alexander's application for community supervision in each case. 
The fact that the jury decided not to recommend community supervision in either case is
immaterial to the sub-issue presented. Alexander's failure to satisfy the prejudice prong of
the Strickland test negates any further discussion of this point. 466 U.S. at 697. This sub-issue is overruled. 

 We next address Alexander's complaint regarding trial counsel's final argument to
the jury at the guilt phase. The argument appears in his brief as follows: 

 Defense counsel made a punishment-type argument during his closing
argument of the guilt phase. Defense Counsel admitted this mistake in his
opening argument during the punishment phase. Defense Counsel focused on
Appellant not being the gunman during his closing at the guilt phase and
provided the jury with facts applicable to the law of parties in the Charge of
the Court. This type of argument was contrary to Appellant's interests and
other argument was available. . . .

 

 . . . .


 . . . There would be no trial strategy in admitting Appellant was at the
scene but merely was not the gunman during closing of the guilt stage. This
scenario directly placed Appellant as a party to the offense in the best case and
there is no plausible professional reason for such an argument to be made to
the jury. 


 . . . .


 Appellant's case was prejudiced because the jury heard from
Appellant's own counsel that [appellant] was at the scene of the offense and
a [participant]. The argument, based on the theory that Appellant merely was
not the gunman, would not be an actual defense to the offense, but would
actually help the jury come to the decision that he was guilty as charged. . . . 
This tactic would be a plausible professional defense at punishment but not
during the guilt phase. 


 We initially note that entirely absent from Alexander's brief is any suggestion as to
what "other argument was available," or what other plausible defense could have been
proffered in the face of the abundance of evidence--direct and circumstantial--that Alexander
was, at the very least, a party to the aggravated robbery, if not the actual gunman himself. 
We also note that Alexander's complaints here are essentially conclusory and lack citation
to pertinent legal authority. In other words, he has either failed to explain why the conduct
he complains of is truly deficient, or he fails to provide us with citation to legal authority
holding that like conduct is deficient. As such, Alexander has improperly briefed this
particular allegation. See Tex. R. App. P. 38.1(h). 

 The lone case cited by Alexander, other than ones simply setting out general standards
of appellate review for Strickland issues, is Holland v. State, 761 S.W.2d 307, 321 (Tex.
Crim. App. 1988), cited for support of the proposition "that making a punishment-type
argument during the guilty phase resulted in ineffective assistance of counsel." However,
we find no support in aid of Alexander's argument. 

 Pertinent to our purpose is the Court's response in Holland to Holland's ineffective
assistance complaint based on a claim that his trial counsel "allowed" or "advised" him to
plead guilty to a capital charge. Id. at 314. Initially pointing to the lack of evidence to
support the claim that trial counsel "allowed" or "advised" Holland to plead guilty, the Court
then stated that "[g]iven the evidence marshalled by the State against appellant, including his
own incriminating statements, we cannot say that the choice of plea, whether spontaneous
or through advice of counsel, was strategically incorrect or unacceptable. In any event, the
Court will not second-guess such a trial decision." Id. at 314-15. To this observation, the
Court added: 

 In this context we also note that appellant now claims that a plea of nolo
contendere should have been entered, if any negative plea was entered at all. 
We agree with the State that, even with the advantage of hindsight, a nolo plea
would be of poor strategic judgment, since the record reflects that defense
strategy was to admit culpability then build up the appellant's character and
reputation throughout the trial. 


Id. at 314 n.4 (emphasis added to last sentence). Thus, even Alexander's authority
recognizes that admitting a defendant's culpability under certain circumstances can indeed
be sound trial strategy. 

 "The right to effective assistance [of counsel] extends to closing argument." 
Yarborough v. Gentry, 540 U.S. 1, 5, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003) (citing Bell v. Cone,
535 U.S. 685, 701-02, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Herring v. New York, 422
U.S. 853, 865, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975)). Nevertheless, trial counsel still
possesses wide latitude in deciding how best to represent his client; thus, deference to
counsel's tactical decisions regarding his closing remarks is particularly important because
of the wide range of legitimate defense strategies available at that stage. Yarborough, 540
U.S. at 5-6. As the Court further noted:

 Closing arguments should "sharpen and clarify the issues for resolution by the
trier of fact," but which issues to sharpen and how best to clarify them are
questions with many reasonable answers. Indeed, it might sometimes make
sense to forgo closing argument altogether. Judicial review of a defense
attorney's summation is therefore highly deferential. . . . 


Yarborough, 540 U.S. at 6 (citations omitted). In Yarborough, the Supreme Court refused
to find trial counsel ineffective when he referred to his client as a "bad person, lousy drug
addict, stinking thief [and a] jail bird. . . ." Id. at 3. In Yarborough, the case turned on
whether the jury would believe the defendant's version of events. Id. at 2. The Supreme
Court refused to find trial counsel ineffective, explaining that counsel's disparaging his client
in closing argument was a calculated risk that went to the heart of an advocate's discretion
and, moreover, by "candidly acknowledging his client's shortcomings, counsel might have
built credibility with the jury and persuaded it to focus on the relevant issues in the case." 
Id. at 9.

 Similarly, in Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004),
trial counsel conceded his client's guilt as part of a trial strategy in a capital murder case. Id.
at 190-92. The Supreme Court held that trial counsel was not ineffective for making such
a concession in the face of overwhelming evidence incriminating his client, because by
conceding guilt, counsel could have been hoping he would gain credibility before the jury
in arguing for a life sentence in the punishment phase. Id. at 191-92. After learning through
pretrial discovery the strength of the State's case, which included a confession, and having
failed to negotiate a punishment recommendation from the State other than death, Nixon's
trial counsel had to develop a plausible trial strategy. In Nixon, the Supreme Court described
it in the following manner:

 Faced with the inevitability of going to trial on a capital charge, Corin
[Nixon's trial counsel] turned his attention to the penalty phase, believing that
the only way to save Nixon's life would be to present extensive mitigation
evidence centering on Nixon's mental instability. Experienced in capital
defense, Corin feared that denying Nixon's commission of the kidnapping and
murder during the guilt phase would compromise Corin's ability to persuade
the jury, during the penalty phase, that Nixon's conduct was the product of his
mental illness. Corin concluded that the best strategy would be to concede
guilt, thereby preserving his credibility in urging leniency during the penalty
phase. 


Id. at 181 (internal record references omitted). 

 In the instant case, Alexander and his juvenile co-defendant, J.L., were caught on
videotape robbing a woman at gunpoint in the parking lot of Wal-Mart. The authorities were
provided with a description of their vehicle, their clothing, and the fact that one of the men
used a shotgun to perpetrate the robbery. Later in the day, the authorities spotted the vehicle
traveling southbound on Interstate 45 at a high rate of speed. A chase ensued involving
several units from various police agencies until the vehicle was finally boxed-in by police
units and stopped. J.L. exited the driver's seat and attempted to flee on foot, while Alexander
exited the vehicle and was immediately taken into custody. Among other items recovered
at the scene were a shotgun found inside the vehicle, a baseball cap worn by Alexander that
had fifty dollars hidden inside the lining, and a bandana similar to the one worn by the
gunman in the robbery. Upon being searched at the jail, Alexander was discovered to have
two cocaine "rocks" inside a plastic bag in the pocket of his red shorts. He later voluntarily
provided a statement to Montgomery County authorities in which he admitted being involved
in the robbery, but only as the driver, not the gunman. It was later learned that at the time
of the robbery, Alexander had been on deferred adjudication community supervision since
January 2006 out of Walker County, Texas, for the offense of aggravated robbery. J.L.
testified at trial and implicated Alexander as the gunman during the robbery. Alexander
presented no witnesses in his defense. 

 Faced with the mountain of incriminating evidence pointing to Alexander as one of
the perpetrators of the robbery, trial counsel here, like counsel for Nixon, cannot be faulted
for looking ahead to the punishment phase in hopes of securing a sentence from the jury
significantly less than confinement for life. We reiterate here that Alexander's brief contains
no mention of an alternate guilt phase trial strategy. In short, Alexander has failed to
overcome the strong presumption that his trial counsel acted pursuant to a sound trial strategy
--indeed, a trial strategy recognized by the United States Supreme Court as quite sound. See
Nixon, 543 U.S. at 184 (quoting the trial court's commendation of trial counsel's
performance notwithstanding the jury's death sentence recommendation: "'[T]he tactic
employed by trial counsel . . . was an excellent analysis of [the] reality of his case.' The
evidence of guilt 'would have persuaded any jury . . . beyond all doubt,' and '[f]or trial
counsel to have inferred that Mr. Nixon was not guilty . . . would have deprived [counsel]
of any credibility during the penalty phase.'") (record references omitted). On the record
before us, appellant failed to overcome the presumption that trial counsel provided adequate
assistance in the presentation and content of his closing argument at the guilt phase. See also
United States v. Jones, 287 F.3d 325, 329-31 (5th Cir. 2002); Hathorn v. State, 848 S.W.2d
101, 117-18 (Tex. Crim. App. 1992); Labonte v. State, 99 S.W.3d 801, 803-04 (Tex. App.--Beaumont 2003, pet. ref'd); Flemming v. State, 949 S.W.2d 876, 881 (Tex. App.- -Houston
[14th Dist.] 1997, no pet.). Alexander's second sub-issue is overruled. 

 We conclude that Alexander has not shown that trial counsel's representation fell
below an objective standard of reasonableness. As such, we find Alexander did not receive
ineffective assistance of counsel as contended. We overrule Alexander's lone appellate issue
in its entirety under both causes submitted. The judgments of the trial court are affirmed. 

 AFFIRMED. 

 __________________________________

 CHARLES KREGER

 Justice


Submitted on November 24, 2009

Opinion Delivered December 9, 2009

Do not publish


Before McKeithen, C.J., Kreger and Horton, JJ.