

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00179-CR

MICHAEL R. LOPEZ                                                         APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

## FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In one point, appellant Michael R. Lopez appeals his conviction for aggravated assault.[2]  Appellant argues that his trial counsel provided ineffective assistance.  We affirm.

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. § 22.02(a)(2) (West 2011).

## Background Facts

In the summer of 2009, Cornesha Kendrick lived at the Collins Park Apartments in Arlington. One afternoon while she and her friend were walking back to her apartment from a convenience store, Cornesha crossed paths with Payton Williams and Bernard Brooks. The men taunted her, and she called her brother, Jerome Hardy, to report the incident. Ismael Haros (Izzy), who had known Cornesha for several years, went to her apartment complex with Jerome that evening.

When they arrived, Payton, Bernard, and appellant were standing outside.[3] Eventually, Jerome and Izzy began individual fights with Payton and Bernard. Cornesha testified that ten to twelve people were in the parking lot during the fights. Izzy won his fight with Bernard, and Bernard backed away in surrender. At that point, appellant exhorted Bernard to restart the fight. Izzy began challenging appellant to fight. According to Cornesha, after the two exchanged words, appellant pulled out a "little pistol." Izzy turned and began to run away, and appellant shot Izzy in the back. Izzy testified that he turned his back to appellant before seeing a gun; he conceded that he did not know who shot him.

After the gunshot, appellant, Payton, and Bernard ran upstairs to appellant's apartment. According to Cornesha, as appellant ran up to the

---

[3]In her testimony, Cornesha did not identify appellant by name. Instead, in open court, she initially pointed at him while describing him as a "tall black dude." She later identified appellant as the defendant in the case.

apartment, he still had the gun in his hand. Cornesha helped Izzy get into a car and rode with him to a hospital. Eventually, surgeons removed the bullet from his body. He survived.

Arlington Police Department Officer Michael Wheatley went to the apartment complex after Glen Haut had called 911 to report the shooting. When Officer Wheatley arrived, he spoke with Haut, who directed him to apartment 215 and said that "several suspects" had run in there. By this time, other officers had joined Officer Wheatley, and the officers announced their presence and knocked on the door of apartment 215. After they saw movement within the apartment but received no answer, the officers declared a barricade situation. As a result, as many officers as possible came to the scene to set up a perimeter around the complex and to wait for a SWAT team to arrive. Simultaneously, the police obtained a search warrant to search the apartment for a gun. As the SWAT team was preparing to enter appellant's apartment, appellant, Payton, Bernard, Tranda McKinnley (appellant's girlfriend), and her children all left the apartment.[4]

The police put appellant, Bernard, and Payton in three separate patrol cars and began to search the apartment. Even though the police conducted a thorough search aided by a dog trained in firearms detection, they never found a gun. The next day, Detective Bill Pino went to the scene of the shooting and

---

[4]Tranda lived in apartment 215 with appellant and her four children. Appellant is the father of two of her children.

3

showed Cornesha a photo lineup of suspects. Cornesha identified appellant as the man who had shot Izzy.

A grand jury indicted appellant with aggravated assault with a deadly weapon; the indictment included an allegation that appellant had been previously convicted of that same offense. The trial court appointed counsel to represent appellant, and counsel filed several pretrial motions on appellant's behalf, many of which the trial court granted. Appellant elected the jury to assess his punishment in the event of a conviction, and he pled not guilty.

During the opening statement given by appellant's counsel, he conceded that appellant was present at the scene of the fight but urged that reasonable doubt existed to pinpoint appellant as Izzy's shooter, particularly considering that the police had not found a gun connecting appellant to the crime. Counsel conducted cross-examinations of each witness called by the State and lodged objections during the State's questioning of those witnesses.

After hearing all of the evidence and arguments from the parties, the jury found appellant guilty, and after listening to evidence concerning his punishment (including evidence about prior convictions), the jury assessed seventy-five years' confinement.[5] Appellant brought this appeal.

---

[5]Appellant had rejected a plea-bargain offer from the State for a term of five years' confinement.

**Appellant's Complaints of Ineffective Assistance of Counsel**

In his sole point, appellant contends that he received ineffective assistance of counsel in the trial court. Specifically, appellant claims that his trial counsel committed numerous "catastrophic blunder[s]" by failing to adequately investigate the case or request the appointment of an investigator, failing to present an expert witness, making numerous alleged tactical errors during the guilt phase of the trial, choosing to have punishment assessed by the jury instead of the trial court, and failing to produce any compelling mitigating witnesses during the punishment phase of the trial. Appellant asserts that his trial counsel's representation was "so substandard that it [was] ineffective on its face."

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). In other words, for a claim of ineffective assistance of counsel to succeed, the record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). An ineffective assistance claim must be "firmly founded in the record," and "the record must affirmatively demonstrate" the meritorious nature of the

claim. *Id.* (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

In evaluating the effectiveness of counsel under the deficient-performance prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record is generally undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813. This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas*, 163 S.W.3d at 740 (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate

court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

The prejudice prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**Alleged failure to investigate**

Appellant argues that his trial counsel was ineffective because he failed to adequately investigate the case or to file a motion for the appointment of an investigator. Counsel for defendants in criminal cases must independently

7

examine facts. *See Butler v. State*, 716 S.W.2d 48, 54 (Tex. Crim. App. 1986). A claim of ineffective assistance based on trial counsel's alleged failure to adequately investigate the case, however, fails unless appellant can show what the investigation would have revealed that reasonably could have changed the result of the case. *See Jordan v. State*, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994); *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (op. on remand). The record is silent as to the extent of trial counsel's investigation. Even if we were to assume that trial counsel made a deficient investigation, appellant has not specified, and the record does not reveal, how further investigation or appointment of an investigator would have produced mitigating evidence that could have changed the outcome of the case. Thus, appellant fails to meet the second prong of *Strickland*. *See Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068; *Stokes*, 298 S.W.3d at 432; *see also Cedillos v. State*, 250 S.W.3d 145, 153–54 (Tex. App.—Eastland 2008, no pet.); *Kirby v. State*, No. 01-04-00603-CR, 2005 WL 3494960, at *3–4 (Tex. App.—Houston [1st Dist.] Dec. 22, 2005, no pet.) (mem. op., not designated for publication) (holding that an ineffective assistance claim could not be sustained when the defendant did not establish how trial counsel's alleged failure to adequately investigate and failure to obtain an appointed investigator caused prejudice).

**Failure to present expert and fact witnesses**

Next, Appellant contends that his trial counsel should have called an expert witness "to rebut the State's evidence" and should have located and called fact witnesses who could have testified that Cornesha was biased against appellant or that someone other than appellant shot Izzy. Trial counsel's failure to call witnesses at the guilt and punishment stages cannot justify reversal on an ineffective assistance claim absent showings that such witnesses were available and that appellant would have benefitted from their testimony. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983); *Garza v. State*, 298 S.W.3d 837, 842 (Tex. App.—Amarillo 2009, no pet.). The record is silent regarding trial counsel's strategy in not calling an expert witness or the types of fact witnesses now suggested by appellant. Furthermore, appellant does not specify what evidence an expert witness could have rebutted, show that an expert witness would have been available, or demonstrate that other fact witnesses who would have testified in his favor actually existed. Thus, we would have to speculate to hold that trial counsel gave deficient assistance by failing to call an expert witness or other fact witnesses, which we will not do. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); *see also Kaba v. State*, No. 02-06-00250-CR, 2007 WL 1776078, at *2 (Tex. App.—Fort Worth June 21, 2007, pet. ref'd) (mem. op., not designated for publication). Consequently, appellant has failed to rebut the strong presumption that his trial counsel's decision to not call an expert witness

9

or other fact witnesses fell within the wide range of reasonable representation. *See Salinas*, 163 S.W.3d at 740.

**Alleged mistakes during the guilt phase of the trial**

Appellant also argues that trial counsel made several tactical errors during the guilt phase of his trial. First, appellant contends that his trial counsel provided ineffective assistance because he conceded appellant's presence at the scene of the shooting during his opening statement yet later elicited testimony from Tranda that appellant had remained in the apartment that night. On trial counsel's direct examination, Tranda gave the following testimony:

> Q. Okay. Let me back up just a little bit. When you went to sleep, the people you named[6] were in your apartment.
>
> A. Uh-huh.
>
> Q. And when you woke up, were the same people there --
>
> A. Yeah, they were still in there.
>
> . . . .
>
> Q. . . . Okay. And when you woke up after your mom called you, the same people were in there?
>
> A. Yeah.
>
> Q. And you don't know whether they left or came back in during the interim, do you?
>
> A. Nah.

---

[6]Tranda had stated that appellant and three other men were in her living room when she went to sleep on the night of the shooting.

Q. Anytime in between?

A. Nah.

Q. So you don't know if they stayed there the whole time?

A. I'm pretty sure they stayed there. They never was outside.

Although Tranda testified that she was "pretty sure" appellant never left the apartment, trial counsel's question may have merely attempted to establish the fact that Tranda did not know whether appellant went outside while she slept. Furthermore, trial counsel never argued to the jury that appellant had been inside and not at the scene of the fight. Instead, in closing argument, he focused on alleged weaknesses in Cornesha's testimony, suggested that someone else at the scene might have shot Izzy, and highlighted Tranda's testimony that she did not allow guns in her house.

It appears, from our review of the record (and particularly the parts of trial counsel's closing argument that highlighted Tranda's testimony), that trial counsel called Tranda primarily to produce evidence that the police never found the assault weapon and that she had never seen a gun in the apartment, not to offer an alibi.[7] Thus, we conclude that trial counsel executed a reasonable trial strategy when he conceded during his opening statement that appellant had been in the parking lot because he never subsequently argued that appellant had

---

[7]Even if trial counsel had intended to call Tranda as an alibi witness, we note that Texas authority entitles defendants to present conflicting defensive theories. *See Booth v. State*, 679 S.W.2d 498, 501 (Tex. Crim. App. 1984); *Whipple v. State*, 281 S.W.3d 482, 497 (Tex. App.—El Paso 2008, pet. ref'd).

11

been in his apartment during the shooting. *See Labonte v. State*, 99 S.W.3d 801, 803 (Tex. App.—Beaumont, pet. ref'd) (holding that there was nothing inappropriate about an attorney's concession in an opening statement that the defendant was a drug dealer because the concession may have been part of a strategy to be honest with the jury and to mitigate the effects of harmful evidence), *cert. denied*, 540 U.S. 927 (2003); *Thompson v. State*, 915 S.W.2d 897, 904 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (op. on reh'g) ("It is plausible that counsel, after reviewing the evidence to be presented, decided that the best strategy would be to appear open and honest to the jury . . . ."); *see also Kennedy v. State*, 402 S.W.3d 796, 798–99 (Tex. App.—Fort Worth 2013, no pet.) (mem. op.) (holding that defense counsel's decision to play a potentially damaging video "frame by frame" was a reasonable trial strategy because it allowed him to argue that a collision between the defendant and a Wal-Mart employee was an accident).

Appellant next contends that trial counsel provided ineffective assistance when he failed to object to the following alleged "triple hearsay" testimony offered by Tranda upon cross-examination by the State:

> Q. And would it be possible that either CPS or Alliance for Children --
>
> A. CPS, yeah.
>
> Q. They might have talked to your children?
>
> A. They talked to my momma. They wouldn't talk to my kids.

Q. Would it be possible that [one of Tranda's children] might have talked to someone with Alliance for Children?

A. Nah.

Q. Or talked to someone with CPS?

A. Not about anything that got nothing to do with this.

Q. Did you ever tell [the child] that you threw the gun away?

A. Why would I tell my daughter that? No.

Q. And so you never told her that you threw it in the green trash can outside?

A. Nah. That's crazy, like -- they're kids.

To prove ineffective assistance of counsel for the failure to object to the admission of evidence during trial, appellant must show that the trial court would have committed error by overruling the objection. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). In his brief, appellant does not cite a single rule of evidence or case to show that the trial judge would have erred by overruling an objection to these questions or answers.[8] Thus, because appellant has not adequately briefed this ground for alleged ineffectiveness and because trial counsel's reasons for not objecting do not appear in the record, we conclude that trial counsel did not render ineffective assistance by failing to object. *See* Tex. R. App. P. 38.1(i) (requiring a brief to contain "appropriate citations to authorities");

---

[8]The State contends that its questions to Tranda in the trial court were permissible because the purpose of them was to impeach her testimony that she did not see appellant with a gun.

*Lucio v. State*, 353 S.W.3d 873, 877–78 (Tex. Crim. App. 2011) (concluding that a court of appeals properly declined to address the merits of an issue that was not properly briefed); *Schwarzer v. State*, No. 02-07-00192-CR, 2008 WL 2404231, at *3 (Tex. App.—Fort Worth June 12, 2008, no pet.) (mem. op., not designated for publication) ("With regard to his bolstering claim, [the appellant] . . . offers no argument or citation to any authority whatsoever. . . . We therefore overrule Appellant's third point for inadequate briefing."); *Nolan v. State*, 102 S.W.3d 231, 236 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("Conclusory statements which cite no authority present nothing for appellate review."); *see also Hernandez v. State*, No. 02-05-00243-CR, 2006 WL 563247, at *2 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op., not designated for publication) (holding that a failure to object to alleged hearsay was not ineffective assistance because the record did not provide any evidence to rebut the presumption in favor of effective assistance).[9]

Next, appellant contends that trial counsel "demonstrated ineptitude" while cross-examining Cornesha. As part of that complaint, appellant appears to argue that for the first time on his cross-examination of Cornesha, trial counsel asked questions that particularly identified appellant as Izzy's shooter. We cannot agree. On the State's initial direct examination, Cornesha testified in part,

---

[9]We also note that generally, an isolated failure to object to "improper evidence does not constitute ineffective assistance of counsel." *Rasmussen v. State*, 822 S.W.2d 707, 713 (Tex. App.—Fort Worth 1991, pet. ref'd).

14

Well, after him and Izzy have their word, Izzy said, ["]If you want it, you can get it too.["] He take off his shirt and takes two steps toward the defendant, and the defendant pulls out a gun. Izzy turns around to run and the defendant shoots. And so I get stuck because I can't believe what just happened, I'm just staring.

Appellant characterizes this testimony as "quite vague" with regard to identifying him as the shooter. However, it would not have been "quite vague" to the jury because Cornesha had already identified appellant as the defendant in open court. Thus, to the extent that appellant argues that his trial counsel connected him to the shooting before the State did or in a more specific way than the State did, we overrule that argument.

Appellant also asserts that his trial counsel provided ineffective assistance by eliciting the following testimony from Cornesha on cross-examination:

Q. So the fight was over with, you testified that you saw Mr. Lopez here pull out a gun and [shoot] Izzy.

A. Yes, sir.

Q. Let's break this down a little bit. What was Mr. Lopez wearing that night?

A. I don't remember what he was wearing.

Q. Do you remember where he pulled the gun from?

A. From his left pocket.

Q. His left pocket?

A. Yes, sir.

Appellant argues that this exchange harmed him because the State had not elicited the detail that appellant had pulled the gun out of his left pocket on direct

15

examination and because trial counsel did not achieve the alleged "logical goal" of such questioning because he did not later elicit evidence that appellant is right-handed.[10]  Although trial counsel elicited new information about the pocket from which appellant pulled the gun, we cannot conclude that counsel rendered ineffective assistance because the record is unclear as to his reasons for eliciting the complained-of testimony (and not eliciting subsequent testimony) and because although eliciting the detail of which pocket the gun came from may not have helped appellant, we cannot discern how it harmed him.  *See Strickland*, 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068; *Menefield*, 363 S.W.3d at 592–93; *Mata*, 226 S.W.3d at 432; *Thompson*, 9 S.W.3d at 813.

**Alleged failures with respect to the punishment phase**

Appellant further contends that he received ineffective assistance because his trial counsel allegedly failed to have punishment assessed by the trial court instead of the jury.  However, because the election as to punishment belongs to defendants, and not to their counsel, any ineffective assistance would lie only in not providing appellant with sufficient information to make an informed choice or in failing to properly execute appellant's election.  *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 2(b) (West Supp. 2012); *Redmond v. State*, 30 S.W.3d 692, 698 (Tex. App.—Beaumont 2000, pet. ref'd); *see also Hernandez v. State*, No.

---

[10]We note that Cornesha's testimony that appellant pulled the gun out of his left pocket did not necessarily indicate that he was left-handed and was not necessarily inconsistent with possible evidence that appellant is right-handed.

16

02-06-00363-CR, 2008 WL 344578, at *7 (Tex. App.—Fort Worth Feb. 7, 2008, pet. ref'd) (mem. op., not designated for publication). Here, appellant signed a motion to have punishment assessed by the jury, and the record is silent as to the advice trial counsel gave appellant in making that election. We will not speculate that trial counsel gave appellant insufficient advice. *See Jackson*, 877 S.W.2d at 771. Thus, we conclude once again that appellant has not overcome the presumption that trial counsel provided reasonable representation. *See Salinas*, 163 S.W.3d at 740.

Next, appellant contends that his trial counsel demonstrated a lack of understanding of hearsay rules in the punishment phase of the trial by attempting to admit a written statement from appellant's previous aggravated assault case. Appellant does not explain, however, how he was harmed by his trial counsel's unsuccessful attempt to introduce evidence that would have apparently benefited appellant[11] but that appellant now states was inadmissible. Thus, we hold that appellant cannot satisfy the prejudice requirement of *Strickland*, and we overrule that part of appellant's point. *See* 466 U.S. at 687, 694, 104 S. Ct. at 2064, 2068.

Finally, appellant argues that trial counsel gave ineffective assistance because he failed to produce any compelling mitigating witnesses at the

---

[11]From the context of the questions surrounding trial counsel's offer of the written statement into evidence, it appears that counsel was attempting to show that appellant had taken responsibility for his previous offense and was remorseful for it.

punishment phase. Trial counsel called appellant's mother and two aunts during the punishment phase. In a conclusory fashion, appellant's counsel dismisses "sympathetic family members" as incapable of being "compelling mitigating witnesses." However, appellant's counsel does not demonstrate, nor does the record reveal, that more compelling witnesses would have been available or what facts such witnesses would have testified to that could have helped appellant. Therefore, appellant has failed to show that trial counsel's decision to call three family members as mitigating witnesses was ineffective assistance. *See Ex parte McFarland*, 163 S.W.3d 743, 757–58 (Tex. Crim. App. 2005) (holding that an appellant failed to show ineffective assistance where he did not name any specific witnesses his attorneys should have called or show that unnamed witnesses would have been available to testify in a manner beneficial to him).

**Appellant has failed to sustain his ineffective assistance claim**

For all of these reasons, we hold that appellant has failed to establish the prongs of his ineffective assistance claim by a preponderance of the evidence, and we overrule his only point. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *Davis*, 278 S.W.3d at 352.

18

**Conclusion**

Having overruled appellant's sole point, we affirm the judgment of the trial court.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 19, 2013